

# EXHIBIT 1

**12-Person Jury**

FILED
1/12/2022 2:49 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH00263
Calendar, 8
16272205

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| CORY DAVIS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>JUMIO CORPORATION, a Delaware corporation,<br><br>*Defendant.* | Case No.:<br><br>**2022CH00263** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Cory Davis ("Plaintiff") brings this Class Action Complaint and Demand for

Jury Trial against Defendant Jumio Corporation ("Jumio" or "Defendant") to put a stop to its

unlawful collection, use, and storage of Plaintiff's and putative Class members' sensitive

biometric identifiers and/or biometric information (collectively referred to herein as, "biometric

data"). Plaintiff, for this Class Action Complaint, alleges as follows upon personal knowledge as

to himself and his own acts and experiences and, as to all other matters, upon information and

belief.

### NATURE OF THE ACTION

1.      Defendant Jumio operates an identity verification service. Jumio contracts with

various businesses to perform identity verification on those companies' users. According to its

marketing materials, Jumio's identity verification software "uses AI, machine learning and

biometrics to automate the verification process." Jumio claims its biometric-based identity

verification software will allow its clients to more effectively deter fraud.

2.      Jumio's software is becoming increasingly popular in the digital era, as online

FILED DATE: 1/12/2022 2:49 PM 2022CH00263

business often requires consumers to establish their identities by submitting photographs of their driver's licenses or identification cards along with photographs of their faces. Jumio developed proprietary facial recognition software that can be used to scan those uploaded photographs, locate consumers' faces, extract unique biometric identifiers associated with the consumers' faces, and determine whether the photographs match uploaded identification cards.

3.      Businesses can integrate Jumio's software into their own websites or mobile apps so that they can establish a consumer's identity—for example, during a sign-up or registration process—without having to send the consumer to another location or webpage. In other words, Jumio's software is designed to be embedded into a business's website or app in such a way that consumers will likely be entirely unaware they are interacting with and providing their sensitive information to an unknown, third-party company, Jumio.

4.      Utilizing biometric identification software exposes consumers to serious and irreversible privacy risks, especially here where it is not clear to consumers that Jumio is collecting their biometric data.

5.      Recognizing the need to protect its citizens from situations like these, the Illinois Legislature enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics.

6.      Despite this law, Jumio disregards consumers' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of BIPA. Specifically, Jumio has violated and continues to violate BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing that biometric data was being collected or stored;

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their biometric data were being collected, stored, and used, as required by BIPA; or

2

FILED DATE: 1/12/2022 2:49 PM   2022CH00263

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their biometric data, as required by BIPA.

7.　　Accordingly, this Complaint seeks an Order: (i) declaring that Defendant's conduct violates BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding damages to Plaintiff and the proposed Class.

## PARTIES

8.　　Plaintiff Cory Davis is a natural person and citizen of the State of Illinois and Cook County.

9.　　Defendant Jumio Corporation is a corporation existing under the laws of the State of Delaware, which is headquartered in Palo Alto, California.

## JURISDICTION AND VENUE

10.　　This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Defendant conducts business transactions in Illinois and has committed tortious acts in Illinois. Defendant is and has been aware that it is collecting biometric data from Illinois residents, without complying with BIPA, throughout the class period. Additionally, this Court has jurisdiction over Plaintiff because he is a resident of the State of Illinois.

11.　　Venue is proper in Cook County because Defendant is a nonresident of Illinois, and the Plaintiff resides in Cook County.

## FACTUAL BACKGROUND

### I.　　The Biometric Information Privacy Act.

12.　　In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school

3

FILED DATE: 1/12/2022 2:49 PM 2022CH00263

cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became wary of this then-growing, yet unregulated, technology. *See* 740 ILCS 14/5.

13.     In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, as unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's biometric scanners were completely unaware that the scanners were not actually transmitting data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

14.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," the Illinois Legislature enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

15.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

4

FILED DATE: 1/12/2022 2:49 PM 2022CH00263

(3) receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b) (emphasis added).

16.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and fingerprints, and—most importantly here—face geometry. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

17.     BIPA's narrowly tailored provisions place no absolute bar on the collection, sending, transmitting, or storing of biometric data. For example, BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does BIPA limit to whom biometric data may be sent or transmitted, or by whom it may be stored. BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

## II.     Jumio Violates the Biometric Information Privacy Act.

18.     By the time BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

19.     Unfortunately, Jumio failed to address these concerns, and it continues to collect, store, and use consumers' biometric data in violation of BIPA by using facial recognition technology. Worse yet, Jumio already litigated and settled a 2019 lawsuit alleging that Jumio collected, stored, and used consumer's biometric information without consent in violation of BIPA. Under the terms of the settlement, Jumio was required to come into compliance with

5

FILED DATE: 1/12/2022 2:49 PM   2022CH00263

BIPA, including the specific requirement to undertake commercially reasonable efforts to obtain consent from Illinois residents prior to collecting their biometric data.

20.     Despite BIPA being in force for over a decade and Jumio being bound by a prior settlement agreement to quickly bring itself into compliance with the law, Jumio persists to this day in violating BIPA through the operation of its biometric identification service.

21.     Jumio partnered up with various businesses to verify their customers' identities including cryptocurrency marketplaces. A consumer establishing his or her identity through Jumio must upload a copy of his or her identification card or document (such as a driver's license, state ID card, or a passport) and a photo of his or her face.

22.     Jumio uses biometric facial recognition to establish consumers' identities. Jumio advertises its biometric identification service as a tool to "verify that the ID document truly belongs to the person making the transaction." Jumio further highlights that its biometric identification service is "a simple and familiar task for your users — all they have to do is take a selfie. Jumio uses this selfie to create a biometric template and to perform advanced facial scanning. We compare the user's facial biometrics to the photo on the ID document[.]" *See* Figure 1.

FILED DATE: 1/12/2022 2:49 PM   2022CH00283

> Jumio's biometric technology enables us to verify that the ID document truly belongs to the person making the transaction. Biometrics adds a critical layer of protection against stolen IDs and impersonation attacks.
>
> It's a simple and familiar task for your users — all they have to do is take a selfie. Jumio uses this selfie to create a biometric template and to perform advanced facial scanning. We compare the user's facial biometrics to the photo on the ID document, and generate two scores: one for validity and one for facial similarity. The validity score tells whether the selfie is a valid, live selfie — not a prerecorded video, bot or deepfake. The similarity score, which is also powered by informed AI, indicates the confidence level that the image in the selfie matches the photo in the identity document. If the similarity score is too low, we alert you to the possibility of impersonation fraud.

**(Figure 1)**

23.     Throughout its various marketing materials, Jumio further reiterates its collection and use of biometric data in describing its "biometric-based verification" services. *See* Figure 2.



**(Figure 2)**

24.     Consumers who establish their identities through a mobile app or a website using

7

FILED DATE: 1/12/2022 2:49 PM    2022CH00263

Jumio's identity software are not made aware that the process relies on biometric technology as opposed to, for example, a real person conducting the identification process or any other confirmation method.

25.     Although Jumio is well aware of Illinois consumers' privacy rights under BIPA, it failed to inform consumers of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

26.     For example, consumers who create an account with one of Jumio's customers, Binance, are not informed that their biometric data will be collected by an unrelated third-party, Jumio. *See* Figures 3-4.



**(Figure 3)**



**(Figure 4)**

8

FILED DATE: 1/12/2022 2:49 PM 2022CH00263

27.     At no point during the sign-up process is a user given a written notice of the collection, purpose, or length of storage of their biometric data. Users are also never asked to provide written consent to the collection, use, and storage of their biometric data.

28.     Consequently, users of Binance and other businesses utilizing Jumio's software unwittingly hand over their highly sensitive biometric data to a company whose very existence, let alone specific privacy terms, they are wholly unaware of.

29.     The Pay By Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Jumio's—where the consumers do not know their biometric data is being collected at all, let alone by an unknown third party—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to reach a critical conclusion: it is crucial for people to understand that (1) they are providing biometric data in the first place; (2) who exactly is collecting it; (3) who it will be transmitted to; (4) for what purposes; and (5) for how long it will be kept. But Jumio disregards these obligations, and instead unlawfully collects, stores, and uses consumer's biometric identifiers and information without proper notice or consent.

30.     Ultimately, Jumio's conduct disregards consumers' statutorily protected privacy rights in violation of BIPA.

**FACTS SPECIFIC TO PLAINTIFF DAVIS**

31.     Plaintiff Cory Davis is a member of an online cryptocurrency marketplace called Binance. In order to participate in the marketplace, consumers are required to confirm their identity.

32.     For this purpose, this online marketplace, along with various other companies, partnered up with Jumio to identify its users using Jumio's biometric technology.

33.     On or around January 2021, Binance's mobile application required Plaintiff Davis

9

FILED DATE: 1/12/2022 2:49 PM 2022CH00263

to upload a photograph of his driver's license and a photograph of his face, so that he could be identified. Jumio subsequently used biometric identification technology to extract his biometric identifiers from each photograph, create two face templates, and compare the templates for a match.

34. Neither Jumio nor Binance informed Plaintiff Davis that Jumio would collect, store, or use his biometric data derived from his face. In fact, there was no notice whatsoever that Jumio is even involved in the process.

35. Plaintiff Davis never signed a written release allowing Jumio to collect, use, or store his biometric identifiers derived from his face.

36. Plaintiff Davis has, therefore, been exposed to the risks and harmful conditions created by Jumio's violations of BIPA alleged herein.

37. Plaintiff Davis seeks damages under BIPA as compensation for the injuries Jumio has caused.

## CLASS ALLEGATIONS

38. **Class Definition**: Plaintiff Cory Davis brings this action pursuant to 735 ILCS 5/2-801 on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their biometric identifiers or biometric information, including faceprints and facial geometry, collected, captured, received, or otherwise obtained by or disclosed to Jumio while residing in Illinois.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been

10

FILED DATE: 1/12/2022 2:49 PM 2022CH00263

finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

39. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of consumers who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

40. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a) whether Defendant collected, captured, or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

    b) whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

    c) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

    d) whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

    e) whether Defendant used Plaintiff's and the Class's faceprints or facial geometry to identify them; and

    f) whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently.

41. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex

11

FILED DATE: 1/12/2022 2:49 PM 2022CH00263

litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

42.     **Appropriateness:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## CAUSE OF ACTION
### Violation of 740 ILCS 14/15(b)
### (On Behalf of Plaintiff and the Class)

43.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44.     BIPA requires companies to obtain informed written consent from individuals before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity

12

FILED DATE: 1/12/2022 2:49 PM 2022CH00263

to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject ... in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information...." 740 ILCS 14/15(b) (emphasis added).

45.     Unfortunately, Jumio fails to comply with these BIPA mandates.

46.     Defendant is corporation and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

47.     Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Jumio (in the form of their facial scans), as explained in detail in Section II. *See* 740 ILCS 14/10.

48.     Plaintiff's and the Class's biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

49.     Jumio violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

50.     Jumio violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

51.     Jumio violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class

13

FILED DATE: 1/12/2022 2:49 PM 2022CH00263

in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

52.     By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Jumio violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA, 740 ILCS 14/1, *et seq.*

53.     On behalf of himself and the Class, Plaintiff Cory Davis seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, liquidated damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees, costs, and expenses pursuant to 740 ILCS 14/20(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Cory Davis, on behalf of himself and the Class, respectfully requests that the Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Cory Davis as a representative of the Class, and appointing his counsel as Class Counsel;

B.     Declaring that Defendant's actions, as set out above, violate BIPA;

C.     Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for

FILED DATE: 1/12/2022 2:49 PM 2022CH00263

*each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

      D.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with BIPA;

      E.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

      F.     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

      G.     Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff Cory Davis demands a trial by jury for all issues so triable.

Respectfully submitted,

**CORY DAVIS**, individually and on behalf of all others similarly situated,

Dated: January 12, 2022      By: /s/J. Eli Wade-Scott        
                                    One of Plaintiff's Attorneys

J. Eli Wade-Scott
ewadescott@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 62075