5 H

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CORY DAVIS, individually and on behalf of
all others similarly situated,

        Plaintiff,

    v.

JUMIO CORPORATION, a Delaware
corporation,

        Defendant.

Case No. 1:22-cv-00776

Honorable Andrea R. Wood

**F I L E D**

MAR 11 2022

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**JUMIO CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

      A.    Legal Standard ...................................................................................... 3

      B.    BIPA and the GLBA Exception.......................................................... 3

      C.    The GLBA Exception bars Davis's claim. ....................................... 5

            1.    Davis's claim against Jumio is based entirely on his use of the Binance App, which verified his identity so that he could trade on the Binance exchange. ........................................................... 5

            2.    Binance is a financial institution subject to the GLBA........................... 5

            3.    The GLBA Exception bars Davis's claim. ............................................. 8

      D.    The Court should also dismiss the Complaint because BIPA does not apply extraterritorially, and Davis has not alleged that the conduct giving rise to his claim occurred primarily and substantially in Illinois........................ 9

CONCLUSION..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Addison Automatics, Inc. v. RTC Grp., Inc.*,
  No. 12 C 9869, 2013 WL 3771423 (N.D. Ill. July 16, 2013) ...................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................................3

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  216 Ill. 2d 100 (2005) .......................................................................................................9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 555 (2007)........................................................................................................3

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) .................................................................................................3

*Bryant v. Compass Grp. USA, Inc.*,
  503 F. Supp. 3d 597 (N.D. Ill. 2020) ...................................................................................7

*Doermer v. Callen*,
  847 F.3d 522 (7th Cir. 2017) .............................................................................................2, 9

*Dur-Ite Co. v. Indus. Comm'n*,
  394 Ill. 338, 350 (1946) .........................................................................................................9

*Hartley v. Villa Scalabrini Nursing & Rehab. Ctr.*,
  No. 08-CV-3830, 2009 WL 3188070 (N.D. Ill. Sept. 30, 2009) ............................................7

*In re Paypal, Inc.*,
  No. C-4651, File No. 162-3201 (F.T.C. May 23, 2018)...........................................................8

*Incandela v. Great-W. Life & Annuity Ins. Co.*,
  No. 07-CV-7051, 2010 WL 438365 (N.D. Ill. Feb. 4, 2010) ...................................................6

*Jane Doe v. Elmhurst Univ.*,
  No. 2020 L 001400 (Cir. Ct. DuPage Cnty. Ill. June 9, 2021) .................................................7

*Jane Doe v. Nw. Univ.*,
  No. 21 C 1579 (N.D. Ill. Feb. 22, 2022) .................................................................................7

*Kuklinski v. Binance, et al.*,
  No. 3:21-cv-01425-SPM..........................................................................................................6

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*McGoveran v. Amazon Web Services., Inc.*,
    C.A. No. 20-1399, 2021 WL 4502089 (D. Del. Sept. 30, 2021) .............................................10

*Monroy v. Shutterfly, Inc.*,
    No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017).........................................9

*Nielen-Thomas v. Concorde Inv. Servs., LLC*,
    914 F.3d 524 (7th Cir. 2019) ......................................................................................4

*People ex rel. Broch v. Hogg*,
    571 N.E.2d 888 (Ill. App. Ct. 1991) ........................................................................4

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ......................................................................9

*Roberts v. City of Chi.*,
    817 F.3d 561 (7th Cir. 2016) ...................................................................................3

*Shen Wei (USA) Inc. v. Sempermed, Inc.*,
    No. 05 C 6004, 2007 WL 328846 (N.D. Ill. Jan. 30, 2007) ......................................6

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
    480 F. Supp. 3d 888 (S.D. Ill. 2020)........................................................................7

*Stevenson v. FedEx Ground Package Sys., Inc.*,
    69 F. Supp. 3d 792 (N.D. Ill. 2014) .........................................................................4

*Stroman Realty, Inc. v. Allison*,
    2017 IL App (4th) 150501-U ...................................................................................10

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) ...................................................................................3

*Walker v. S.W.I.F.T. SCRL*,
    491 F. Supp. 2d 781 (N.D. Ill. 2007) ......................................................................10

**FEDERAL STATUTES**

Gramm-Leach-Bliley Act of 1999 ("GLBA"), 15 U.S.C. §§ 6801–09 ................................ passim

12 U.S.C. § 1841............................................................................................................7

12 U.S.C. § 1843............................................................................................................7, 8

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

**STATE STATUTES**

Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq* ...................... passim

720 ILCS 570/505 ....................................................................................................................4

820 ILCS 305/4 .........................................................................................................................4

**RULES**

FED. R. CIV. P. 8 ........................................................................................................................3

FED. R. CIV. P. 12 ............................................................................................................... passim

**REGULATIONS**

12 C.F.R. § 225.86 ....................................................................................................................7

31 C.F.R. § 1010.100 .............................................................................................................7, 8

**OTHER AUTHORITIES**

*About Us*, BINANCE.US, https://www.binance.us/en/about (last visited Mar. 9,
    2022) .....................................................................................................................................5

*Cryptocurrency*, BLACK'S LAW DICTIONARY (11th ed. 2019) ..........................................................8

*Registration and Deposits*, BINANCE (Sept. 17, 2019 19:35),
    https://www.binance.com/en/support/announcement/360033855351 ......................................5

## INTRODUCTION

Plaintiff Cory Davis ("Davis") alleges[1] that he is a member of the Binance cryptocurrency exchange, and that the Binance mobile application (the "Binance App") required him to verify his identity before he could trade on the Binance exchange. To do this, Davis alleges that the Binance App required him to upload a photograph of himself (a "selfie") and a photograph of his driver's license, and that the Binance App then verified his identity by comparing the two images using software that was created by Jumio and "embed[ed]" and "integrate[d]" into the Binance App. Compl. ¶ 3.

Davis claims that in connection with this process, Jumio collected his biometric information or biometric identifiers as those terms are defined in the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. Davis alleges that neither Binance nor Jumio provided him with notice of, and did not obtain his consent to, Jumio's collection of his biometric information or biometric identifiers as required under BIPA Section 14/15(b). The only allegations Davis makes as to his own experience are based on his use of the Binance App, but the Complaint asserts a sole claim, against Jumio, for violation of BIPA Section 14/15(b).

The Court should dismiss the Complaint because it is flatly barred by Section 14/25(c) of BIPA, which provides that "[n]othing in this Act shall be deemed to apply *in any manner* to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 [the 'GLBA'] and the rules promulgated thereunder." BIPA 14/25(c) (emphasis added). Binance is a financial institution subject to the GLBA; Davis's claim against Jumio is based entirely on his use of the Binance App in order to trade on the Binance exchange; and Jumio's only involvement was to provide software that performs the identity verification function that is required by Binance in order for Binance users to trade on the Binance exchange. To apply BIPA to Jumio based on these allegations would be to apply BIPA "in any manner" to Binance. This is expressly barred under Section 14/25(c). And this fatal

---

[1] Jumio accepts as true the factual allegations in the Complaint, Dkt. 1-1, solely for purposes of this Motion. Jumio does not concede that the allegations are accurate.

defect cannot be cured by amendment, so the Complaint should be dismissed with prejudice. *Doermer v. Callen*, 847 F.3d 522, 528 (7th Cir. 2017).

In addition, even if Davis's claim were not prohibited by BIPA's express terms (and it is), the Court should dismiss the Complaint because Davis has not alleged facts showing that BIPA applies in the first place. It is well established that BIPA does not apply extraterritorially. Davis must therefore allege facts showing that the conduct on which he bases his claim occurred primarily and substantially in Illinois. But Davis has not alleged the location where any of the relevant acts occurred. Indeed, the only geographical fact about Jumio that Davis has alleged is that Jumio is headquartered in Palo Alto, California. Compl. ¶ 9. Because Davis has not alleged facts showing that the conduct that forms the basis of his claim against Jumio occurred primarily and substantially in Illinois, he has not alleged facts showing that BIPA applies, so his claim for violation of BIPA should be dismissed for this reason as well.

## BACKGROUND

Binance is "an online cryptocurrency marketplace." *Id.* ¶ 31. A Binance user may access Binance through the Binance App, but the Binance App requires the user to first verify his or her identity before trading on Binance. To do this, the Binance App requires the user to upload a copy of the user's identification document (such as a driver's license) and a selfie. The Binance App then compares the two images to confirm a match, using software that is developed by Jumio and "embedded" and "integrated" into the Binance App. Compl. ¶¶ 3, 22, 26.

Davis's own experience is described in paragraphs 31 and 33–35 of the Complaint. According to Davis, he is a member of Binance. In January 2021, he used the Binance App, which prompted him to upload photographs of his driver's license and his face in order to verify his identity. *Id.* ¶¶ 31–33. According to Davis, Jumio "subsequently used biometric identification technology to extract his biometric identifiers from each photograph, create two face templates, and compare the templates for a match." *Id.* ¶ 33. Davis does not allege the geographical location where any of the conduct relevant to his claims occurred. Davis alleges that Jumio is headquartered in California, and that he is a citizen of Illinois. *Id.* ¶¶ 8, 9.

## ARGUMENT

### A.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts to "show[] that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff must "provid[e] some specific facts to ground [his] legal claims," *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009), and "give enough details about the subject-matter of the case to present a story that holds together," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Although courts must "accept all well-pleaded facts as true and draw reasonable inferences in [a plaintiff's] favor," *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016), "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). It is not enough for a plaintiff to "merely parrot the statutory language of the claims that they are pleading," *Brooks*, 578 F.3d at 581.

### B.    BIPA and the GLBA Exception

BIPA sets out requirements for companies that are "in possession of" biometric data (BIPA 14/15(a), (c), (d), and (e)), and companies that "collect, capture, purchase, receive through trade, or otherwise obtain" (for purposes of this Motion, "collect") biometric data (BIPA 14/15(b)). Davis's claim is based on Section 14/15(b), which imposes certain notice and consent requirements on companies that collect biometric data.

Recognizing that "[t]he use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings" (BIPA 14/5(a)), the Illinois legislature also identified a number of activities and entities that were expressly *excluded* from BIPA's application. Those are set forth in Section 14/25. Relevant to Davis's claim, Section 14/25(c) provides that "[n]othing in this Act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution

that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder." BIPA 14/25(c) (the "GLBA Exception").

The "in any manner" language of the GLBA Exception does important work. The addition of that language is clearly intentional—as the same language is not found in other subsections of Section 14/25. *See, e.g.*, BIPA 14/25(e) (government contractor exception). By including the phrase "in any manner" after the word "apply," the legislature made clear that BIPA cannot be applied even *indirectly* to entities that are subject to the GLBA. A contrary interpretation would render the phrase "in any manner" surplusage and should be avoided. *See Nielen-Thomas v. Concorde Inv. Servs., LLC*, 914 F.3d 524, 528 (7th Cir. 2019) ("We must also, if possible, give effect to every clause and word of a statute, taking care not to read words into the text or to treat any words as surplusage.") (internal quotation marks and citation omitted).

In addition, the phrase "in any manner" is broadly construed under Illinois law. For example, the Illinois Controlled Substances Act provides that a vehicle is subject to forfeiture if it is used "in any manner to facilitate the . . . possession . . . of substances manufactured, distributed, dispensed, or possessed in violation of th[e] Act." 720 ILCS 570/505. Because of this language, a car was subject to forfeiture where the occupant of the car hid cocaine in a vial in his sock. *See People ex rel. Broch v. Hogg*, 571 N.E.2d 888, 892 (Ill. App. Ct. 1991). The court reasoned that the car added an additional "dimension of privacy" to aid in the concealment, and so "facilitated" the possession of the drug in violation of the statute. *Id.* Similarly, the Illinois Workers' Compensation Act, which states that employers may not interfere "*in any manner whatsoever*" with an employee's exercise of rights, 820 ILCS 305/4(h) (emphasis added), has been interpreted to prohibit an employer from requiring an employee to give notice before seeking medical treatment for a work injury, on the theory that requiring an employee to make a phone call or leave a voicemail on the way to the doctor "interferes" with the employee's exercise of rights. *See Stevenson v. FedEx Ground Package Sys., Inc.*, 69 F. Supp. 3d 792, 796 (N.D. Ill. 2014) ("[T]he unqualified language of the statute states plainly that employers may not interfere 'in any manner whatsoever' with an employee's exercise of his rights. This

unambiguous statutory text compels this Court to conclude that imposing even modest requirements as a precondition to seeking medical treatment is 'interfere[nce]' within the meaning of section 4(h).") (internal citation omitted).

**C.     The GLBA Exception bars Davis's claim.**

Davis's sole claim falls squarely within the GLBA Exception, and must be dismissed, with prejudice, on that basis. The claim is based entirely on Davis's use of the Binance App, which required him to verify his identity to trade on the Binance exchange. As explained below, Binance is unquestionably a "financial institution . . . that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999." BIPA 14/25(c). To apply BIPA to Jumio based on the role its software allegedly plays in streamlining financial transactions on the Binance exchange would be to apply BIPA "in any manner" to Binance. The statute's express language prohibits this.

**1.     Davis's claim against Jumio is based entirely on his use of the Binance App, which verified his identity so that he could trade on the Binance exchange.**

According to Davis, the Binance App verified his identity using Jumio technology, which was required in order to trade on the Binance cryptocurrency exchange. Specifically, Davis alleges that he "is a member of the online cryptocurrency marketplace called Binance;" that the Binance App "required [him] to confirm [his] identity;" and that the Binance App did this by requiring Davis to upload photographs of his driver's license and his face so that the Binance App could use Jumio's "biometric identification technology to extract his biometric identifiers" and compare the faces depicted in the two photographs. Compl. ¶¶ 31–33.

**2.     Binance is a financial institution subject to the GLBA.**

It is a judicially-noticeable fact that the full name of Binance is Binance.US.[2] And

---

[2] Persons in the United States are permitted to access the Binance cryptocurrency marketplace only through Binance.US. *See About Us*, BINANCE.US, https://www.binance.us/en/about (last visited Mar. 9, 2022) ("Binance.US is a digital asset marketplace … Binance.US provides a fast, secure and reliable platform to buy and sell cryptocurrencies in the United States.); *Our US Partner, Binance.US, Opens for Registration and Deposits*, BINANCE (Sept. 17, 2019 19:35), https://www.binance.com/en/support/announcement/360033855351 ("Binance licenses its matching engine and wallet technologies to Binance.US, so [United States] users can enjoy the

Binance.US is undeniably a financial institution subject to the GLBA.

*First*, Binance.US itself has made clear that it is a financial institution subject to the GLBA in court filings in a case strikingly similar to this one—and filed more than 3 months earlier. That case is entitled *Kuklinski v. Binance, et al.*, No. 3:21-cv-01425-SPM, filed in state court on October 4, 2021 and removed to the U.S. District Court for the Southern District of Illinois on November 12, 2021, where it remains pending before Judge Stephen P. McGlynn. In *Kuklinski*, the plaintiff asserts BIPA and other claims against three defendants: Binance.US (aka BAM Trading Services Inc.) (the domestic trading entity), Binance Capital Management Co., Ltd. (the foreign entity), and Jumio. Dkt. 1-1 at ¶¶ 48–64. On January 31, 2022, all defendants moved to dismiss the Complaint, raising multiple defenses, including that the GLBA barred Kuklinski's claims against both Binance.US and Jumio. In connection with that motion, Binance.US explained in detail how and why it is a financial institution subject to the GLBA. *See* Def. BAM Trading Services Inc.'s Mot. to Dismiss the Compl. and Incorporated Mem. of Law at 3–8, *Kuklinski v. Binance Capital Management Co.*, No. 3:21-cv-01425-SPM (S.D. Ill. Jan. 31, 2022), ECF No. 30 (attached as Ex. 1).[3] Binance.US clearly treats itself and holds itself out as a "financial institution subject to [the GLBA]." BIPA 14/25(c).

*Second*, judicially noticeable facts show that Binance.US is a "financial institution subject to the GLBA" under Section 14/25(c). The incorporated GLBA definition of "financial

---

cutting-edge digital assets trading technology Binance is known for."). The existence of these website pages cannot reasonably be disputed and the contents are therefore subject to judicial notice. *See, e.g.*, *Incandela v. Great-W. Life & Annuity Ins. Co.*, No. 07-CV-7051, 2010 WL 438365, at *5 (N.D. Ill. Feb. 4, 2010) ("The Seventh Circuit has taken judicial notice of information presented on reliable websites."); *Addison Automatics, Inc. v. RTC Grp., Inc.*, No. 12 C 9869, 2013 WL 3771423, at *3 n.2 (N.D. Ill. July 16, 2013) (taking judicial notice of website describing products and services provided by private entities); *Shen Wei (USA) Inc. v. Sempermed, Inc.*, No. 05 C 6004, 2007 WL 328846, at *3 n.3 (N.D. Ill. Jan. 30, 2007) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination.").

[3] Kuklinski has since amended his complaint, but has not cured its fatal defects, and the defendants will again move to dismiss it on March 15, 2022.

institution"[4] includes "any institution the business of which is engaging in financial activities as described in section 1843(k) of Title 12," 15 U.S.C. § 6809(3)(A). Section 1843(k) of Title 12 lists activities such as (1) "[l]ending, exchanging, transferring, investing for others, or safeguarding money," and (2) "any activity that the [Federal Reserve] Board has determined, by order or regulation that is in effect on November 12, 1999, to be so closely related to banking or managing or controlling banks as to be a proper incident thereto." 12 U.S.C. §§ 1841(f), 1843(k)(4)(A) & (F). Accordingly, an entity that is engaged in (1) lending, exchanging, transferring, safeguarding, or investing for others money, or (2) any activity that the Federal Reserve Board has determined to be closely related to banking, is "a financial institution subject to the GLBA" under BIPA 14/25(c).

Binance.US qualifies under either criterion. Binance.US is registered as a money transmitter with the U.S. Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN"). *See* Ex. 4 (attaching results of registrant search via https://www.fincen.gov/msb-registrant-search). This fact is subject to judicial notice.[5] It is therefore engaged in "lending, exchanging, [or] transferring . . . money," so is a financial institution subject to the GLBA. In addition, the Federal Reserve Board has expressly determined that "money transmission services are closely related to banking." *Orders Issued Under Section 4 of the Bank Holding Company Act*, 81 FED. RESERVE BULL. 1130, 1131, (F.R.B. 1995); *see also* 12 C.F.R. § 225.86(a)(2)(v) (providing that "money transmission" is an "[a]ctivit[y] determined to be closely related to banking."); 31 C.F.R. § 1010.100(ff)(5)(i)(A) ("The term 'money transmission services' means

---

[4] *See* 15 U.S.C. § 6801; Order, *Jane Doe v. Elmhurst Univ.*, No. 2020 L 001400 (Cir. Ct. DuPage Cnty. Ill. June 9, 2021) (attached as Ex. 2) (the term "financial institution" under BIPA "means an entity that is subject to [the GLBA]"); *see also* Order at 2, *Jane Doe v. Nw. Univ.*, No. 21 C 1579 (N.D. Ill. Feb. 22, 2022), ECF No. 31 (same) (attached as Ex. 3); *Bryant v. Compass Grp. USA, Inc.*, 503 F. Supp. 3d 597, 601 (N.D. Ill. 2020) (same); *Stauffer v. Innovative Heights Fairview Heights, LLC*, 480 F. Supp. 3d 888, 903 (S.D. Ill. 2020) (same).

[5] *See Hartley v. Villa Scalabrini Nursing & Rehab. Ctr.*, No. 08-CV-3830, 2009 WL 3188070, at *1 n.1 (N.D. Ill. Sept. 30, 2009) ("The court takes judicial notice that the corporate entity registered with the Secretary of State is Resurrection Senior Services, Inc., doing business as Villa Scalabrini Nursing and Rehabilitation Center.").

the acceptance of currency, funds, or other value that substitutes for currency from one person and the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means."). Binance.US is therefore engaged in activities that are closely related to banking, and so is a financial institution subject to the GLBA.

Davis's own allegations also show that Binance.US is a financial institution subject to the GLBA. He alleges he is "a member of an online cryptocurrency marketplace called Binance." Compl. ¶ 31. Cryptocurrency is "[a] digital or virtual currency that is . . . designed to function as a medium of exchange." *Cryptocurrency*, BLACK'S LAW DICTIONARY (11th ed. 2019). By describing it as a "cryptocurrency marketplace," Davis alleges that Binance is engaged in the "[l]ending, exchanging, transferring, investing for others, or safeguarding money," 12 U.S.C. § 1843(k)(4)(A), and that its services entail transmission of "currency" or "substitutes for currency" 31 C.F.R. § 1010.100(ff)(5)(i)(A). Consistent with this, the Federal Trade Commission ("FTC"), which enforces the GLBA, recently made clear that it considered the "peer-to-peer payment service" Venmo to qualify as a financial institution because, like Binance.US, it is "significantly engaged in 'transferring money.'" *See* FTC Compl. ¶¶ 4, 35, *In re Paypal, Inc.*, No. C-4651, File No. 162-3201 (F.T.C. May 23, 2018), *available at* https://www.ftc.gov/enforcement/cases-proceedings/162-3102/paypal-inc-matter.

### 3. The GLBA Exception bars Davis's claim.

Because Binance is a financial institution subject to the GLBA, "nothing in [BIPA] shall be deemed to apply" to Binance "in any manner." BIPA 14/25(c). Yet this is exactly what Davis seeks. Davis alleges that the Binance App gave "no notice whatsoever that Jumio is even involved in the [Binance identity verification] process." Compl. ¶ 34. And he asks the Court to examine the notice and consent process within the Binance App—an App that belongs to and is controlled by Binance, and that "integrate[s]" and "embed[s]" Jumio software in order to verify users' identities so that he can trade on the Binance exchange. To apply BIPA to these facts would apply it to Binance in some manner, which the statute forbids. This fatal defect cannot be

cured by amendment, so the claim against Jumio must be dismissed with prejudice. *Doermer*,

847 F.3d at 528.

**D.     The Court should also dismiss the Complaint because BIPA does not apply extraterritorially, and Davis has not alleged that the conduct giving rise to his claim occurred primarily and substantially in Illinois.**

Every court to consider the issue has agreed that BIPA does not apply extraterritorially.

*See, e.g., Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017) ("[BIPA] is not

authorized to have extraterritorial effect."); *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL

4099846, at *5 (N.D. Ill. Sept. 15, 2017) ("BIPA does not apply extraterritorially."); *see also*

*Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85 (2005) (holding that an Illinois

statute cannot impose liability based on conduct occurring outside the state unless "the express

provisions of the statute" make clear that the statute is intended to apply extraterritorially)

(quoting *Dur-Ite Co. v. Indus. Comm'n*, 394 Ill. 338, 350 (1946)). BIPA therefore applies only to

conduct that occurs in Illinois.

Conduct is deemed to occur in Illinois when "the circumstances that relate to [a] disputed

transaction occur primarily and substantially" in Illinois. *Avery*, 216 Ill. 2d at 187; *see also*

*Rivera*, 238 F. Supp. 3d at 1101. "[T]here is no single formula or bright-line test for determining

whether a transaction occurs within this state. Instead, a court must analyze whether the

circumstances relating to the transaction occur primarily and substantially within Illinois." *Id.*

(cleaned up). No single factor is determinative, and in the context of BIPA, courts consider

factors such as where the alleged "scan" of facial geometry took place and the location where a

company develops its policy regarding the retention of biometric data. *See, e.g., Monroy*, 2017

WL 4099846, at *6 (applying *Avery* in BIPA action and observing that "each case must be

decided on its own facts"); *Rivera*, 238 F. Supp. 3d at 1101–02 (citing *Avery*, 216 Ill. 2d at 187).

To state his claim, Davis must allege facts showing that the relevant conduct occurred

primarily and substantially in Illinois. Yet Davis has not alleged *any* facts showing that *any* of

the conduct at issue occurred in Illinois. He has alleged that Jumio is headquartered not in

Illinois, but in California. Compl. ¶ 9. And his other allegations referencing location either fail to

identify any *relevant* conduct or are wholly conclusory—as with his bare, unexplained allegations of purported "business transactions" and "tortious acts" in Illinois." Compl. ¶ 10. Davis does allege that he is a citizen of Illinois. Compl. ¶ 8. But he does not allege that any of the acts at issue took place in Illinois, and if "[t]he only connection to Illinois" is the plaintiff's "status as a resident," the *Avery* test is not satisfied. *Stroman Realty, Inc. v. Allison*, 2017 IL App (4th) 150501-U, ¶ 62; *see also Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 795 (N.D. Ill. 2007) (same). Indeed, this case is strikingly similar to *McGoveran v. Amazon Web Services., Inc.*, C.A. No. 20-1399, 2021 WL 4502089 (D. Del. Sept. 30, 2021), which was dismissed on extraterritoriality grounds because "[a]t bottom," plaintiffs alleged only that the phone calls from which their biometric data were allegedly extracted "originated from Illinois," not that any conduct by the defendant took place in Illinois. *Id.* at *4. Similarly here, Davis alleges that he is an Illinois resident, but he fails to allege any facts showing that Jumio did anything relevant to BIPA in Illinois. His claim must be dismissed for this reason as well as pursuant to the GLBA Exception.

## CONCLUSION

For the reasons stated above, Jumio respectfully asks the Court to dismiss Davis's Complaint with prejudice.

Dated:  March 11, 2022

Respectfully submitted,

*/s/ Susan D. Fahringer*

Susan D. Fahringer
Nicola C. Menaldo
Anna Mouw Thompson (Pro Hac Vice)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
SFahringer@perkinscoie.com
NMenaldo@perkinscoie.com
AnnaThompson@perkinscoie.com

Debra R. Bernard
**PERKINS COIE LLP**
110 North Wacker Drive
34th Floor
Chicago, IL 60606
Telephone: (312) 324-8400
Facsimile: (312) 324-9400
DBernard@perkinscoie.com

*Attorneys for Defendant Jumio Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 11, 2022, a copy of the foregoing **JUMIO CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** was electronically filed via the Court's ECF system and served via email on the following attorneys of record:

J. Eli Wade-Scott
ewadescott@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, IL 60654
Telephone: 312-589-6370
Firm ID: 62075

*Attorneys for Plaintiff*

*/s/ Susan D. Fahringer*
Susan D. Fahringer

American Legal Forms®
Legal Style / ph 312-332-1922
www.americanlegalforms.com

THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| KAMIL KUKLINESKI, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Civil Action No. 3:21-cv-01425-SPM |
| BINANCE CAPITAL MANAGEMENT CO., LTD. d/b/a BINANCE, BAM TRADING SERVICES d/b/a BINANCE.US and JUMIO CORPORATION, | Judge:      Hon. Stephen P. McGlynn |
| Defendants. | |

**DEFENDANT BAM TRADING SERVICES INC.'S MOTION TO DISMISS
THE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant BAM Trading Services

Inc. ("BAM") respectfully submits this motion to dismiss the "Class Action Complaint" (the

"Complaint") against BAM with prejudice and the following incorporated memorandum of law

in support thereof.

## I.   **PRELIMINARY STATEMENT**

This Court should dismiss the Complaint against BAM with prejudice.  Plaintiff brings

claims against BAM for violations of the Illinois Biometric Information Privacy Act ("BIPA")

and unjust enrichment.  On their face, these claims are fatally defective.  Plaintiff ignores that by

its express terms BIPA does not apply to financial institutions that are subject to the Gramm-

Leach-Bliley Act of 1999 (the "GLBA").  BAM, which operates a trading platform that allows

users to purchase and sell digital assets using (among other things) fiat currency (i.e., money), is

just such a financial institution.  BAM is exempt from BIPA and, therefore, this Court should

dismiss Plaintiff's BIPA claim – as well as his unjust enrichment claim, which rests on the same

conduct and is derivative of the BIPA claim.  This Court need go no further.

But even if BAM were not exempt from BIPA (and it is), this Court should dismiss

Plaintiff's BIPA claim against BAM for at least three additional reasons.  **First**, California law

applies to Plaintiff's BIPA claim under BAM's governing Terms of Use, which are incorporated

by reference into the Complaint.  Plaintiff brought his BIPA claim under Illinois (not California)

law and, consequently, this Court should dismiss it.  **Second**, BIPA does not apply

extraterritorially.  Plaintiff does not plead any facts showing that the alleged BIPA violation by

BAM (which is headquartered in California and not a resident of Illinois) occurred primarily and

substantially in Illinois and, as a result, this Court should dismiss his BIPA claim.  **Third**, the

Complaint does not adequately allege that BAM violated BIPA.  Plaintiff asserts claims against

three separate defendants – BAM, Binance Capital Management Co., Ltd. ("Binance"), and

Jumio Corporation ("Jumio") – but largely fails to plead which Defendant did what and instead lumps them together, leaving BAM and this Court to speculate as to BAM's alleged BIPA violation. Accordingly, this Court should dismiss Plaintiff's BIPA claim.

Similarly, even if Plaintiff's unjust enrichment claim were not derivative of his BIPA claim (and it is), this Court should dismiss his unjust enrichment claim against BAM because it is not adequately alleged. Although Plaintiff alleges that BAM received fees from users of its trading platform, he fails to plead facts showing that BAM did not earn those fees (by, for example, providing trading services) or that those fees were obtained to the detriment of users because they resulted from biometric information (or for any other reason). Therefore, this Court should dismiss Plaintiff's unjust enrichment claim.

Finally, even if this Court does not dismiss Plaintiff's BIPA and unjust enrichment claims against BAM (and it should), this Court should dismiss his class action allegations against BAM as a matter of law. By agreeing to BAM's Terms of Use, Plaintiff waived all rights to assert class action claims against BAM because the Terms of Use include an express "Class Action Waiver." The Supreme Court, as well as Illinois and California courts, have repeatedly enforced such class action waivers. Thus, if Plaintiff's claims against BAM proceed at all, they can proceed only on an individual basis.

For all of these reasons and those that follow, this Court should dismiss the Complaint against BAM with prejudice.[1]

## II.     LEGAL STANDARD

To survive a motion to dismiss, a complaint must "state a claim for relief that is plausible on its face." Diedrich v. Ocwen Loan Servicing, LLC, 839 F.3d 583, 588 (7th Cir. 2016) (citing

---

[1] BAM joins the arguments of Jumio and Binance in their respective motions to dismiss to the extent applicable to BAM.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A plaintiff "must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8."  Bell v. City of Chicago, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).  Plaintiff does not satisfy the pleading requirements of Federal Rule of Civil Procedure 8.

**III.   ARGUMENT**

**A.   This Court Should Dismiss Plaintiff's BIPA Claim against BAM.**

This Court should dismiss Plaintiff's BIPA claim against BAM because (1) BIPA does not apply to financial institutions; (2) California law, not Illinois law, applies as to BAM; (3) BIPA does not apply extraterritorially; and (4) the Complaint does not adequately allege that BAM violated BIPA.

**1.   This Court Should Dismiss Plaintiff's BIPA Claim Against BAM Because BIPA Does Not Apply to Financial Institutions Such as BAM.**

By its express terms, BIPA does not apply to financial institutions that – like BAM – are subject to the GLBA.  "Nothing in [BIPA] shall be deemed to apply **in any manner** to a financial institution . . . subject to Title V of the [GLBA] and the rules promulgated thereunder." 740 ILCS 14/25(c) (emphasis added).  "[This] exemption is explicit in that BIPA does not apply to financial institutions already subjected to GLBA."  Stauffer v. Innovative Heights Fairview Heights, LLC, 480 F. Supp. 3d 888, 903 (S.D. Ill. 2020).

"The General Assembly likely excluded financial institutions because they are already subject to a comprehensive privacy protection regime under federal law."  Bryant v. Compass Grp. USA, Inc., 503 F. Supp. 3d 597, 601 (N.D. Ill. 2020).  Specifically, the GLBA reflects "the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those

customers' nonpublic personal information." 15 U.S.C. § 6801(a). "Title V of the GLBA

contains a number of provisions designed to protect the privacy of 'nonpublic personal

information' . . . that consumers provide to financial institutions." Trans Union LLC v. FTC,

295 F.3d 42, 46 (D.C. Cir. 2002) (citing 15 U.S.C. §§ 6801-6809).

   Title V of the GLBA defines a "financial institution" as "any institution the business of

which is engaging in financial activities as described in section 1843(k) of Title 12." 15 U.S.C.

§ 6809(3)(A). Pursuant to Section 1843(k), the "activities . . . considered to be financial in

nature" include (1) "[l]ending, exchanging, transferring, investing for others, or safeguarding

money or securities" and (2) "any activity that the [Board of Governors of the Federal Reserve

System (the "Federal Reserve Board")] has determined, by order or regulation that is in effect on

November 12, 1999, to be so closely related to banking or managing or controlling banks as to

be a proper incident thereto." 12 U.S.C. §§ 1843(k)(4)(A), (F).

   Courts have understood the term "financial institution" as used in the GLBA to have a

broad reach. "The GLBA does not exhaustively list the types of 'financial institutions' subject to

its coverage." FTC v. AmeriDebt, Inc., 343 F. Supp. 2d 451, 456 (D. Md. 2004). Rather,

"'financial institution' is defined 'very broadly' under the GLBA and includes several entities

not traditionally recognized as financial institutions." Id. at 457. BAM is a "financial

institution" under the GLBA for at least two separate and independent reasons.

   **First**, BAM is engaged in activities that are "financial in nature," including exchanging,

transferring, and safeguarding money. 12 U.S.C. § 1843(k)(4). The Complaint alleges: "[BAM]

is a digital asset marketplace or cryptocurrency exchange which allows Illinois account holders

using the company's platform to purchase various cryptocurrencies including, but not limited to,

Bitcoin [and] Ethereum." (Compl. ¶ 4.)[2]  The Complaint continues:  "Plaintiffs and Class

members . . . create[ed] accounts and us[ed] [BAM's] software and exchange platform for

purchases relating to digital assets."  (Id. ¶ 62; see also id. ¶¶ 7, 17.)  BAM's Terms of Use as

last updated on April 26, 2021, which are incorporated by reference into the Complaint (see id.

¶ 38),[3] show that BAM is engaged in activities that are "financial in nature," including

exchanging, transferring, and safeguarding money:

- "BAM operates a platform ('Platform') that provides you with Trading Services for digital assets (also known as a 'cryptocurrency' or 'virtual currency'), which is issued, stored, and/or transferred based on the protocol of a computer network known as a blockchain or a public transaction ledger ('Digital Assets').  You may use the Platform to execute the following trades: (1) sale of a Digital Asset for fiat or another Digital Asset; and (2) purchase of a Digital Asset with fiat or another Digital Asset."  (Ex. A. at 4-5.)

- "You can purchase Digital Asset(s) using: (1) Digital Asset(s) or fiat monies in your BAM Account(s); (2) a valid bank account in the name that matches your Account(s); or (3) a credit or debit card in the name that matches your Account(s) ('Payment Methods'). . . . Digital Asset(s) that you purchase will be deposited into your Account(s) as soon as the funds have settled to BAM, which may take up to five Business Days if the purchase was made via a bank account, credit, or debit card."  (Id. at 8-9.)

- "You authorize BAM to credit or debit (or provide settlement information to third parties for the purposes of the third-party crediting or debiting) your Digital Assets and/or fiat monies from your Account(s) in accordance with your Instruction.  We reserve the right not to effect any Transaction if you have insufficient fiat monies or Digital Assets in your Account(s) (i.e. less than the required amount to settle the Transaction and to pay all the fees associated with the Transaction)."  (Id. A at 10.)

- "U.S. dollar deposits stored in your Account(s) are held in pooled custodial accounts at one or more U.S. banks.  Our custodial accounts have been established with the intention that they be eligible for Federal Deposit Insurance Corporation ('FDIC') pass-through, up

_____

[2] Cryptocurrency is a "digital or virtual currency that is not issued by any central authority" and "is designed to function as a medium of exchange."  Black's Law Dictionary (11th ed. 2019).

[3] (Declaration of Ezekiel L. Hill in Support of BAM Trading Inc.'s Motion to Dismiss the Complaint ("Hill Decl."), Ex. A (BAM's Terms of Use as last updated on April 26, 2021).)  This Court may consider BAM's Terms of Use in deciding this motion to dismiss because they are incorporated by reference.  "[T]he incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment."  Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012).

to the per-depositor coverage limit then in place (currently $250,000 per eligible individual). . . . It is our policy to comply with the regulations and other requirements of the FDIC for pass-through deposit insurance."  (Id. at 5.)

BAM's Trading Rules, which are part of BAM's Terms of Use, continue:[4]

- "The BAM Platform settles the Fiat Currency payments in all Filled Orders on a periodic basis, by debiting and crediting the relevant Fiat Currency balances in the Linked Fiat Wallet(s)."  (Ex. B § 2.9.3.)

- "Subject to any Limits imposed by BAM and the terms set out in any Linked Wallet Addendums, a Trader may withdraw some or all of its Fiat Currency from the Linked Fiat Wallet(s)."  (Id. § 3.3.2.)

BAM's Terms of Use, including its Trading Rules, demonstrate that BAM is engaging in "financial activities" and, therefore, is a "financial institution" under the GLBA.

**Second**, BAM is engaged in "[an] activity that the [Federal Reserve Board] has determined, by order or regulation that is in effect on November 12, 1999, to be so closely related to banking or managing or controlling banks as to be a proper incident thereto."  12 U.S.C. § 1843(k)(4)(F).  The Federal Reserve Board determined by orders in effect on November 12, 1999, that "money transmission services are closely related to banking."  As it stated: "[F]or the reasons discussed in this order and the Board's previous orders, the Board concludes that domestic money transmission services are closely related to banking."  Norwest Corp., 81 Fed. Res. Bull. 1130, 1131 (1995), reprinted at 1995 WL 736783, at *2; see also 12 C.F.R. § 225.86(a)(2)(v) ("money transmission" is an "[a]ctivit[y] determined to be closely related to banking" (citing Norwest, 81 Fed. Res. Bull. 1130 (1995))).

---

[4] (Hill Decl., Ex. B (BAM's Platform Trading Rules as last revised on Sept. 18, 2019 ("Trading Rules")).)  This Court may consider BAM's Trading Rules in deciding this motion to dismiss because they are part of BAM's Terms of Use, which are incorporated by reference into the Complaint.  (Ex. A at 1 ("[The Trading Rules] are incorporated into these Terms."); see supra n.3.)

BAM provides domestic money transmission services.  BAM is "a money services business registered with the U.S. Department of the Treasury's Financial Crimes Enforcement Network ['FinCEN']."  (Ex. A at 6.)[5]  More specifically, BAM is registered with FinCEN (and holds similar registrations in 34 states and the District of Columbia) as a "money transmitter," the designation for an entity that "provides money transmission services," which include "the acceptance of currency, funds, or other value that substitutes for currency from one person and the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means."  31 C.F.R. 1010.100(ff)(5).[6]

For all of these reasons, BAM is a financial institution subject to the GLBA.  Indeed, BAM's Privacy Policy as last updated on July 7, 2021, which is incorporated by reference into the Complaint (see Compl. ¶ 39),[7] expressly states that "the personal information we collect, use, or disclose about . . . consumers who initiate or complete the process of applying for financial products or services . . . is subject to the federal Gramm-Leach-Bliley Act and implementing regulations."  (Ex. D at 6.)

---

[5] (See also Hill Decl., Ex. C (BAM's MSB Registration Status Information dated Jan. 31, 2022).) This Court may take judicial notice of BAM's FinCEN registration via its MSB Registration Status Information, which is a matter of public record and available on FinCEN's website, in deciding this motion to dismiss.  "[A] district court [may] take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment," which "allow[s] courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard."  Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080-81 (7th Cir. 1997); see also Laborers' Pension Fund v. Blackmore Sewer Constr., Inc., 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of bank ownership information on the FDIC website).

[6] As a registered money services business, BAM also is a "financial institution" pursuant to FinCEN's regulations promulgated under the Bank Secrecy Act.  See 31 C.F.R. 1010.100(t)(3) (defining a "financial institution" to include "[a] money services business").

[7] (Hill Decl., Ex. D (BAM's Privacy Policy as last updated on July 7, 2021).)  This Court may consider BAM's Privacy Policy in deciding this motion to dismiss because it is incorporated by reference into the Complaint.  (See supra n.3.)

Therefore, this Court should dismiss Plaintiff's BIPA claim against BAM because BIPA does not apply to financial institutions such as BAM.[8]

### 2.    This Court Should Dismiss Plaintiff's BIPA Claim against BAM Because California Law, Not Illinois Law, Applies as to BAM.

California law applies as to BAM.  BAM's Terms of Use provide: "These Terms shall be construed in accordance with and governed for all purposes by the laws and public policy of the State of California applicable to contracts executed and to be wholly performed within such state." (Ex. A at 19.)  Since California law governs, this Court should dismiss Plaintiff's BIPA claim against BAM, which is brought under Illinois law.

### a.    Plaintiff's BIPA Claim Is Subject to the Choice-of-Law Provision in the Terms of Use.

A federal court exercising diversity jurisdiction – including, as here, under the Class Action Fairness Act – applies the choice-of-law rules of the state in which it sits.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Cunningham Charter Corp. v. Learjet, Inc., 592 F.3d 805, 806 (7th Cir. 2010) (the Class Action Fairness Act "creates federal diversity jurisdiction").  Therefore, this Court should apply the choice-of-law rules of Illinois.

Under Illinois law, non-contract claims that are "dependent upon [a] contract are subject to [the] contract's choice-of-law clause regardless of the breadth of the clause." Medline Indus. Inc. v. Maersk Med. Ltd., 230 F. Supp. 2d 857, 862 (N.D. Ill. 2002).  While "[t]he issue of whether a claim is 'dependent' upon a contract most often arises in the context of tort claims,"

---

[8] It is precisely because BAM is a financial institution that BAM verifies users like Plaintiff as part of the account creation process.  "Financial institutions that fail to implement effective anti-money laundering programs . . . can face severe civil, regulatory, and criminal penalties."  JM Adjustment Servs., LLC v. J.P. Morgan Chase Bank, N.A., No. 16-10630, 2018 WL 1168940, at *5 (E.D. Mich. Mar. 6, 2018).  As the Complaint acknowledges: "The purpose of [BAM's] identify verification process is to avoid fraudulent activity or unauthorized users from accessing [BAM's] exchange." (Compl. ¶ 9.)  BAM's Terms of Use explain BAM's "Identity Verification" process.  (Ex. A at 6; see also infra at pp. 9-10.)

the "same analytical approach should apply to determine whether [a statutory claim] is

dependent upon a contract." Johnson v. Diakon Logistics, No. 16-CV-06776, 2021 WL

4477893, at *6 (N.D. Ill. Sept. 30, 2021).  A non-contract claim is dependent upon a contract if

"(1) the claim alleges a wrong based on the construction and interpretation of the contract,

(2) the . . . claim is closely related to the parties' contractual relationship, or (3) the  . . . claim

could not exist without the contract." Amakua Dev. LLC v. Warner, 411 F. Supp. 2d 941, 955

(N.D. Ill. 2006); see also Miyano Mach. USA, Inc. v. Zonar, No. 92 C 2385, 1994 WL 233649,

at *2 (N.D. Ill. May 23, 1994) ("[I]t [is] appropriate to apply contract provisions to . . . claims

closely related to the parties' contractual relationship." (internal quotation marks omitted)).

Plaintiff's BIPA claim is dependent upon BAM's Terms of Use for at least two reasons.

 **First**, Plaintiff's BIPA claim is closely related to BAM's Terms of Use.  The Complaint

alleges that "[BAM] and Jumio obtained biometric identifiers and information from users of its

exchange, including facial geometry data, without first notifying them, without disclosing the

length for collection, storage and use of this information and without obtaining proper written

consent." (Compl. ¶ 14.)  The Terms of Use govern the data received from a user to confirm

his/her identity when creating an account, as well as the process by which those data are

collected, recorded, and stored.  For example, under the heading "Account Creation," the Terms

of Use provide for (among other things) "Identity Verification":

> As a money services business registered with [FinCEN], BAM is required to,
> among other things, identify users on our Platform.  You agree to provide us with
> the information we request for the purposes of identity verification and the
> detection of money laundering, terrorist financing, fraud, or any other financial
> crime and permit us to keep a record of such information for at least six years . . .
> The information we request may include certain personal information . . . .

(Ex. A at 6.)  Identity verification as part of account creation is at the heart of Plaintiff's BIPA

claim and governed by the Terms of Use.  As a result, Plaintiff's BIPA claim is closely related to

-9-

the Terms of Use.  Indeed, Plaintiff himself concedes that his BIPA claim is related to the Terms

of Use, referring to the Terms of Use in his Complaint.  (See Compl. ¶ 38 ("This Terms of Use

document makes no mention of the collection of biometric data by its application or website.").)

      **Second**, Plaintiff's BIPA claim could not exist without BAM's Terms of Use.  The

Complaint alleges that – "during the account creation process" – "[P]laintiff . . . and other

Illinois users and account holders with [BAM] had their biometric data collected, recorded and

stored to confirm their identities in order to trade on the cryptocurrency exchange."  (Id. ¶¶ 24-

30.)  The Terms of Use dictate the account creation process.  For example, under the heading

"Account Creation," the Terms of Use provide for the "Setup" of accounts: "Full use of our

Services requires that you create an Account(s) by: (1) providing us with information such as

your full name, email address . . . , and such other information as we may require; (2) selecting a

strong password; and (3) accepting these Terms."  (Ex. A. at 5.)  The Terms of Use then provide

for "Identity Verification" as described above, which requires users "to complete certain

verification procedures before [they] are permitted to use the Services."  (Id. at 6.)  Since the

account creation process is governed by the Terms of Use and Plaintiff's BIPA claim turns on

the account creation process, Plaintiff's BIPA claim could not exist without the Terms of Use.

      For all of these reasons, Plaintiff's BIPA claim against BAM is subject to the choice-of-

law provision in the Terms of Use.

          **b.**    **This Court Should Enforce the Choice-of-Law Provision in the
Terms of Use.**

      Under Illinois law, a choice-of-law provision is enforced "unless it would **both** violate

fundamental Illinois public policy **and** Illinois has a materially greater interest in the litigation

than the chosen State." Midway Home Entm't, Inc. v. Atwood Richards, Inc., No. 98 C 2128,

1998 WL 774123, at *2 (N.D. Ill. Oct. 29, 1998) (emphasis added; internal quotation marks

omitted).  Neither is the case here.

      **First**, the choice-of-law provision applying California law does not violate fundamental Illinois public policy.  Under Illinois law, a court "should not refuse to apply the law of a foreign State, however unlike its own, unless it is contrary to pure morals and abstract justice, or unless enforcement would be of evil example and harmful to its people."  <u>Potomac Leasing Co. v. Chuck's Pub, Inc.</u>, 156 Ill. App. 3d 755, 759 (2d Dist. 1987).  "The fact that a different state may provide certain statutory rights for a plaintiff which are not available under the chosen state's law does not invalidate a choice-of-law provision as contrary to public policy."  <u>WTM, Inc. v. Henneck</u>, 125 F. Supp. 2d 864, 868 (N.D. Ill. 2000).  "Illinois courts . . . have enforced parties' choice-of-law provision even though a foreign state's [law] left the Illinois residents no recourse."  <u>Midway</u>, 1998 WL 774123, at *3 ("[T]he choice-of-law provision requiring the application of New York law bars the Illinois Consumer Fraud Act claim.").

      To state the obvious, the application of California law is not "contrary to pure morals and abstract justice" or "of evil example and harmful to [Illinois'] people."  <u>Id.</u>  "[T]he public policy of [Illinois] must be sought in its constitution, legislative enactments and judicial decisions," and "there is no Illinois legislative enactment, judicial decision, or constitutional provision which articulates a public policy against applying [California law]."  <u>Id.</u> at *2, *3.  Moreover, California law itself protects biometric information.  The California Consumer Privacy Act of 2018 (the "CCPA") – like BIPA – regulates the collection, use, and disclosure of biometric information.  Cal. Civ. Code § 1798.100 <u>et seq.</u>  For example, the CCPA enumerates "consumer rights to request information regarding personal information collected by businesses," <u>id.</u> § 1798.110(a), and requires businesses to "inform consumers as to the categories of personal information to be collected and the purposes for which the categories of personal information

shall be used," id. § 1798.100(b).  That "personal information" includes "[b]iometric

information," id. § 1798.140(o), which is "an individual's physiological, biological, or

behavioral characteristics," including but not limited to "imagery of the . . . face . . . from which

an identifier template . . . can be extracted, " id. § 1798.140(b).  Further, in November 2020,

California voters passed an amendment to the CCPA, the California Privacy Rights Act of 2020

(the "CPRA"), which expands and enhances the CCPA.  See generally Cal. Civ. Code

§ 1798.100, et seq. (operative Jan. 1, 2023).  The CPRA contains additional regulations

concerning biometric information, including categorizing biometric information as "sensitive"

information entitled to heightened protections.  See generally id.  Indeed, it is well-recognized

that California is at the forefront of privacy regulation in the United States.[9]  Since the choice-of-

law provision in the Terms of Use applying California law does not violate fundamental Illinois

public policy, this Court should enforce it.[10]

     **Second**, Illinois does not have a materially greater interest in this litigation than

California.  California has an interest in the application of California law to California

---

[9] See, e.g., Daisuke Wakabayashi, California Passes Sweeping Law to Protect Online Privacy, N.Y. TIMES (Jun. 28, 2018) (calling the CCPA "one of the most significant regulations overseeing the data-collection practices of technology companies in the United States").

[10] Although the court in In re Facebook Biometric Information Privacy Litig., 185 F. Supp. 3d 1155 (N.D. Cal. 2016), held that a choice-of-law provision that would have applied California law to a BIPA claim was unenforceable under California's choice-of-law rules, that decision is not only non-binding (and, in BAM's view, wrongly decided) but also inapplicable.  **First**, the Facebook court concluded that application of California law would violate fundamental Illinois public policy because "California has no law or policy equivalent to BIPA" and, "[u]nlike Illinois, California has not legislatively recognized a right to privacy in personal biometric data." Id. at 1169-70.  That is no longer true.  In 2018 – two years after the Facebook decision – California **did** legislatively recognize a right to privacy in personal biometric data.  (See supra at p. 12.)  **Second**, the Facebook court applied California's choice-of-law rules, not Illinois'.  Id. at 1168.  As the Facebook court recognized, that was "potentially significant" to its decision because "Illinois uses a 'pure morals and abstract justice' consideration" while California does not.  Id. at 1167 n.1 (quoting Potomac Leasing, 156 Ill. App. 3d at 759).

businesses.  "[C]ourts have noted the importance of enforcing choice of law provisions for

businesses with nationwide consumers to limit the risk and expenses of litigation under different

laws in every state."  Abat v. Chase Bank USA, N.A., 738 F. Supp. 2d 1093, 1096 (C.D. Cal.

2010).  That is certainly true here.  Both BAM and Jumio maintain their principal places of

business in California with users that cross state lines.  (See Compl. ¶¶ 17-18.)  In contrast,

Illinois' interest is in protecting its citizens' rights under BIPA, but that is not enough to establish

a materially greater interest than California.  Indeed, Illinois courts consistently enforce choice-

of-law provisions even when it results in Illinois citizens losing statutory rights under Illinois

law.  (See supra at p. 11.)

Since the choice-of-law provision in the Terms of Use would not violate fundamental

Illinois public policy and Illinois does not have a materially greater interest in this litigation than

California, this Court should enforce the choice-of-law provision and apply California law.  This

Court should dismiss Plaintiff's BIPA claim – which is brought under Illinois, not California,

law – against BAM.  See, e.g., M. Block & Sons, Inc. v. IBM Corp., No. 04 C 340, 2004 WL

1557631, at *7 (N.D. Ill. July 8, 2004) ("Because New York law controls . . . , Plaintiff cannot

bring an Illinois statutory claim against Defendant.").

### 3. This Court Should Dismiss Plaintiff's BIPA Claim against BAM Because BIPA Does Not Apply Extraterritorially.

An Illinois "statute is without extraterritorial effect unless a clear intent in this respect

appears from the express provisions of the statute."  Avery v. State Farm Mut. Auto. Ins. Co.,

216 Ill. 2d 100, 184-85 (2005) (quoting Dur-Ite Co. v. Indus. Comm'n, 394 Ill. 338, 350 (1946)).

"[W]ith regard to [BIPA], there is no sign of that sort of intent from the Illinois legislature."

Rivera v. Google Inc., 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017).  As a result, "[BIPA] is not

authorized to have extraterritorial effect."  Id.  "BIPA violations must occur in Illinois in order

for plaintiffs to obtain any relief." <u>McGoveran v. Amazon Web. Servs., Inc.</u>, C.A. No. 20-1399-LOS, 2021 WL 4502089, at *3 (D. Del. Sept. 30, 2021).

A violation is deemed to occur in Illinois when "the circumstances that relate to [it] occur primarily and substantially in Illinois." <u>Avery</u>, 216 Ill. 2d at 187.  To satisfy this standard, the "majority of circumstances relating to the alleged violation" must have occurred in Illinois. <u>Landau v. CNA Fin. Corp.</u>, 381 Ill. App. 3d 61, 65 (1st Dist. 2008).  The Complaint alleges only the following connection to Illinois: Plaintiff is an Illinois resident who used BAM's application to create an account.  (Compl. ¶¶ 15, 17.)  That allegation does not adequately allege that the majority of the circumstances giving rise to BAM's alleged BIPA violation occurred in Illinois.

Neither Plaintiff's residency nor his ability to use BAM's application to create an account establishes that the alleged BIPA violation occurred primarily and substantially in Illinois.  "A plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality." <u>McGoveran</u>, 2021 WL 4502089, at *4 (collecting cases).  Nor is Plaintiff's ability to use BAM's application enough: "The only connection to Illinois was [the victim's] status as a resident and [defendant's] remote solicitation of [the victim].  That was insufficient to allow Illinois regulatory law . . . to apply to [defendant]." <u>Stroman Realty, Inc. v. Allison</u>, 2017 IL App (4th) 150501-U, 2017 WL 2589983, at *7 (4th Dist. 2017).[11]

<u>McGoveran</u> is directly on point.  There, Illinois residents alleged that non-residents "violated BIPA by collecting, possessing, redisclosing, profiting from, and failing to safeguard their biometric identifiers and biometric information, including their voiceprints."  2021 WL

_____

[11] The Complaint also makes the formulaic recitation that "Defendants' acts and omissions, at relevant times, have occurred in the course of trade or commerce in the State of Illinois." (Compl. ¶ 51.)  That naked legal conclusion may not be considered on a motion to dismiss.  "While factual allegations must be accepted as true, legal conclusions may not be considered." <u>Agnew v. Nat'l Collegiate Athletic Ass'n</u>, 683 F.3d 328, 334 (7th Cir. 2012) (citing <u>Iqbal</u>).

4502089, at *2 (internal quotation marks omitted).  The plaintiffs asserted that their biometric

identifiers and information were extracted from "calls originating from Illinois, from Illinois

citizens, and from . . . Illinois phone numbers."  Id. at *4.  The court dismissed the BIPA claim

because the "[p]laintiffs failed to allege conduct that occurred primarily and substantially in

Illinois."  Id.  The court held that the "location of the caller does not . . . say anything about the

location where the rest of the conduct occurred."  Id.  Since the defendants were "located wholly

outside Illinois," the complaint provided "no indication . . . that [d]efendants did anything in

Illinois."  Id.  In attempt to save their BIPA claim, the plaintiffs urged "the adoption of a rule"

holding that, "under BIPA, as long as the source of the biometric data is Illinois, that's enough to

establish liability."  Id. at *6.  The court rejected that "overly broad and ultimately untenable"

rule, finding that it "flies in the face of Illinois cases holding that a plaintiff's residency is not

enough to survive a motion to dismiss based on extraterritoriality."  Id.  The court concluded:

"BIPA does not apply extraterritorially, but the complaint alleges an extraterritorial application

of BIPA."  Id.

The same is even more true here.  The Complaint does not plead any facts plausibly

showing that BAM's alleged BIPA violation occurred in Illinois, much less primarily and

substantially in Illinois.  The Complaint concedes that BAM (and each of the other Defendants)

is a non-resident and has a principal place of business outside of Illinois.  (Compl. ¶¶ 16-18, 21.)

Plaintiff alleges only that he is a resident of Illinois who used BAM's application to create an

account.  (See supra at p. 14.)  That is not enough.  See McGoveran, 2021 WL 4502089, at *6;

Vulcan Golf, LLC v. Google Inc., 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (finding the

allegation that the plaintiffs were Illinois residents insufficient to "plausibly suggest" that the

alleged violation "occurred primarily and substantially in Illinois").

Therefore, this Court should dismiss Plaintiff's BIPA claim against BAM because BIPA does not apply extraterritorially and the Complaint does not plead facts showing that BAM's alleged BIPA violation occurred primarily and substantially in Illinois.

> **4.    This Court Should Dismiss Plaintiff's BIPA Claim against BAM Because the Complaint Does Not Adequately Allege That BAM Violated BIPA.**

Pursuant to the basic pleading requirements of Federal Rule of Civil Procedure 8, BAM – like any defendant – "is entitled to know what [it] did that is asserted to be wrongful." Bank of Am., N.A. v. Knight, 725 F.3d 815, 818 (7th Cir. 2013). "Notice pleading and vague allegations of collective conduct don't go hand-in-hand; these types of lumped allegations are inadequate under Federal Rule of Civil Procedure 8." Patel v. Fendler, No. 15-CV-0366-MJR-SCW, 2016 WL 336017, at *1 (S.D. Ill. Jan. 28, 2016). Indeed, details about the specific conduct of each defendant "are not merely nice-to-have features of an otherwise-valid complaint; to pass muster under [Rule 8], a claim to relief must include such particulars." Atkins v. Hasan, No. 15 CV 203, 2015 WL 3862724, at *2 (N.D. Ill. June 22, 2015).

The Complaint largely fails to plead which Defendant did what, leaving BAM and this Court to speculate as to BAM's alleged BIPA violation. As discussed above, the Complaint alleges that "[P]laintiff . . . and other Illinois users and account holders with [BAM] had their biometric data collected, recorded and stored to confirm their identities in order to trade on the cryptocurrency exchange." (Compl. ¶ 24.) The Complaint, however, lumps together Defendants with respect to the alleged collection, recording, and storage of the biometric data. For example:

- "[BAM] and Jumio obtained biometric identifiers and information from users of its exchange, including facial geometry data, without first notifying them, without disclosing the length for collection, storage and use of this information and without obtaining proper written consent." (Id. ¶ 14.)

-16-

- "Binance, with assistance and control from or as an alter ego of [BAM], was the entity that directly collected [Plaintiff]'s and other Illinois [BAM] users' biometric information and identifiers or is otherwise responsible for the collection of this biometric data." (Id. ¶ 40.)

- "Defendants recorded, collected, and stored [Plaintiff]'s and other Class members' 'biometric information', based on 'biometric identifiers' used to identify them, through the use of facial scanning and mapping and as defined by [BIPA]." (Id. ¶ 52.)

On their face, such allegations do not identify the conduct by BAM (as distinct from that by other Defendants) with respect to the alleged collection, recording, and storage of biometric data – i.e., the conduct that constitutes BAM's alleged BIPA violation. The Complaint "without any details about who did what . . . is inadequate" and "does not propound a plausible contention that a particular person," much less BAM, "did anything wrong." Knight, 725 F.3d at 818.

Therefore, this Court should dismiss Plaintiff's BIPA claim against BAM because the Complaint does not adequately allege that BAM violated BIPA.[12]

## B. This Court Should Dismiss Plaintiff's Unjust Enrichment Claim against BAM.

This Court should dismiss Plaintiff's unjust enrichment claim against BAM because (1) it is derivative of the BIPA claim and (2) the Complaint does not adequately allege it.

**First**, Plaintiff's unjust enrichment claim is derivative of his BIPA claim. "Unjust enrichment is not a separate cause of action under Illinois law." Horist v. Sudler & Co., 941 F.3d 274, 281 (7th Cir. 2019). "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim – and, of course, unjust enrichment will stand or fall with the related claim." Cleary v.

---

[12] In an apparent effort to sidestep this fatal defect, the Complaint makes a series of naked legal conclusions that expressly lump together Defendants. (Compl. ¶19.) Those conclusory allegations do not state a claim (see supra at pp. 2-3, n.11) and only highlight the Complaint's failure to plead each Defendant's – and specifically BAM's – alleged BIPA violation.

Philip Morris Inc., 656 F.3d 511, 517 (7th Cir. 2011). Plaintiff's unjust enrichment claim

depends on the same conduct as his BIPA claim. Therefore, this Court should dismiss Plaintiff's

unjust enrichment claim alongside the dismissal of his BIPA claim.

**Second**, the Complaint does not adequately allege an unjust enrichment claim against

BAM. To plead an unjust enrichment claim, "a plaintiff must allege that the defendant has [1]

unjustly retained a benefit [2] to the plaintiff's detriment, and that [3] defendant's retention of the

benefit violates the fundamental principles of justice, equity, and good conscience." HPI Health

Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 131 Ill. 2d 145, 160 (1989). Plaintiff does not.

As an initial matter, Plaintiff does not plead facts showing that BAM unjustly retained a

benefit. The Complaint alleges that "Binance and [BAM] received monetary gain via payment

of fees from its users and account holders for the purchase and transfer of digital assets and

cryptocurrency." (Compl. ¶ 61.) Plaintiff does not plead that BAM failed to provide the trading

services for which it allegedly collected fees. Plaintiff cannot claim unjust enrichment "if he

received from the other that which it was agreed the . . . other should give in return." Cummings

by Techmeier v. Briggs & Stratton Ret. Plan, 797 F.2d 383, 390 (7th Cir. 1986).

Moreover, Plaintiff does not plead facts showing a detriment. The Complaint alleges that

"Plaintiffs and Class members, to their detriment, have conferred benefits on Defendants

Binance and [BAM] by creating accounts and using their software and exchange platform for

purchases relating to digital assets." (Compl. ¶ 62.) Plaintiff does not identify the "benefits"

conferred on BAM to his "detriment" but, whatever those "benefits" may be, they are not related

to biometric information. The Complaint does not plead any facts showing that BAM's fees

resulted from the biometric information of Plaintiff (or anyone else). Indeed, Plaintiff himself

admits that the "payment of fees from [BAM's] users and account holders" was "for the

purchase and transfer of digital assets and cryptocurrency." (Id. ¶ 61.)

Further, Plaintiff does not plead facts showing that BAM's retention of fees from users and account holders violates fundamental principles of justice, equity, and good conscience. The Complaint alleges that "Defendants' retention of fees from sales and transfers to and for Plaintiff and the Class violates fundamental principles of justice, equity, and good conscience." (Id. ¶ 63.) Plaintiff's formulaic recitation of this element is legally inadequate. (See supra at pp. 2-3, n.11.) The Complaint does not plead any facts showing that it violates fundamental principles for BAM to retain the fees that it has received from users trading on its platform.

For all of these reasons, this Court should dismiss Plaintiff's unjust enrichment claim against BAM.

**C.      This Court Should Dismiss Plaintiff's Class Action Allegations against BAM Because Plaintiff Has Waived Any Class Action Claims against BAM.**

This Court should dismiss Plaintiff's class action allegations against BAM because, by agreeing to BAM's Terms of Use, Plaintiff has waived all rights to assert class action claims against BAM. See, e.g., Niiranen v. Carrier One, Inc., No. 20-CV-06781, 2022 WL 103722, at *9 (N.D. Ill. Jan. 11, 2022) (dismissing class allegations based on a class action waiver). The Terms of Use expressly "govern [Plaintiff's] access and use of the Services provided by BAM." (Ex. A at 1.) The Terms of Use contain the following "Class Action Waiver":

> TO THE EXTENT PERMITTED BY LAW, ALL CLAIMS MUST BE
> BROUGHT IN A PARTY'S INDIVIDUAL CAPACITY, AND NOT AS A
> PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS,
> COLLECTIVE ACTION, OR REPRESENTATIVE PROCEEDING. UNLESS
> BOTH YOU AND BAM AGREE, NO . . . JUDGE MAY CONSOLIDATE MORE
> THAN ONE PERSON'S CLAIMS . . . . BY AGREEING TO THESE TERMS,
> YOU ACKNOWLEDGE THAT YOU AND BAM EACH WAIVE THE RIGHT
> TO . . . PARTICIPATE IN A CLASS ACTION.

(Ex. A at 20.)

The Supreme Court has repeatedly held that such class action waivers are enforceable.

See, e.g., Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1628 (2018); Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 238 (2013); AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 352 (2011). So have Illinois and California courts.  See, e.g., Kinkel v. Cingular Wireless LLC, 223 Ill. 2d 1, 41 (2006); Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 364 (2014).

       This Court should do the same – especially on the facts here.  The Terms of Use (1) directed users to read them "carefully" and explained that "[t]he Terms you see below are important" because (among other things) "they . . . [c]ontain a class action waiver" (Ex. A at 1); (2) informed users that "[t]hese Terms . . . constitute valid and legally binding obligations, enforceable against you in accordance with their respective terms" (id. at 12); and (3) confirmed with users that "[y]ou agree that you have read, understand, and accept these Terms by signing up for an Account(s) . . . with BAM" and that, "[i]f you do not agree with these Terms, do not access or use the Services, Sites, or any other aspect of our business" (id. at 1).

       Therefore, this Court should dismiss Plaintiff's class action allegations against BAM because Plaintiff has waived any class action claims against BAM.  If Plaintiff's claims against BAM proceed at all, they can proceed only on an individual basis.[13]

## IV.    CONCLUSION

       For all of these reasons, this Court should dismiss the Complaint against BAM with prejudice.

---

[13] Alternatively, this Court should strike Plaintiff's class action allegations against BAM pursuant to Federal Rule of Civil Procedure 12(f) for the same reasons.  See, e.g., Hill v. Wells Fargo Bank, N.A., 946 F. Supp. 2d 817, 832-33 (N.D. Ill. 2013) (striking class allegations where a class could not be maintained).

Dated:   January 31, 2022

Respectfully submitted

GOODWIN PROCTER LLP

*/s/ Daniel Roeser*
Daniel Roeser (admitted *pro hac vice*)
droeser@goodwinlaw.com
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: +1 212 813-8800
Fax: +1 212 355-3333

Ezekiel L. Hill (admitted *pro hac vice*)
ehill@goodwinlaw.com
**GOODWIN PROCTER LLP**
1900 N Street NW
Washington, DC 20036
Tel.: + 1 202 346-4000
Fax: + 1 202 346-4444

*Attorneys for Defendant BAM Trading
Services Inc.*

**CERTIFICATE OF SERVICE**

    I, Daniel Roeser, an attorney, hereby certify that, on January 31, 2022, I caused the foregoing to be electronically filed via the Court's CM/ECF system, which effected service on all counsel of record.

                                      */s/ Daniel Roeser*
                                      Daniel Roeser

American Legal Forms®
Legal Style / ph 312-332-1922
www.americanlegalforms.com

ORDER                                                                        2020L001400-164

UNITED STATES OF AMERICA

STATE OF ILLINOIS                                                    COUNTY OF DU PAGE

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT

JANE DOE
                                    Plaintiff

        -VS-                              2020L001400
                                          CASE NUMBER
ELMHURST UNIVERSITY
                                    Defendant

# FILED

**21 Jun 09    AM 08: 56**

*Candice Adams*

CLERK OF THE
18TH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

## ORDER

This cause coming to be heard on Defendant Elmhurst University's ("Elmhurst") Section 2-619.1 Motion for Summary Judgment and Alternative Motion to dismiss (the "Section 2-619.1 Motion") and Supplemental 2-615 Motion to Dismiss (the "Supplemental Motion to Dismiss"), due notice having been given and the Court being fully advised in the premises, and for the reasons stated on the record and reflected in the transcript, THE COURT HEREBY HOLDS THAT:

1. The term "financial institution" in Section 14/25(c) of the Illinois Biometric Information Privacy Act ("BIPA") means an entity that is subject to Title V of the Gramm-Leach-Bliley Act of 1999, 15 U.S.C. § 6801, *et seq.* ("GLBA") and the rules promulgated thereunder; and
2. Elmhurst has not satisfied its burden of establishing that it is a financial institution subject to the GLBA.

Accordingly, IT IS HEREBY ORDERED THAT:

1. The Supplemental Motion to Dismiss is DENIED without prejudice.
2. Elmhurst shall have June 22, 2021 to file a renewed motion to dismiss under Section 2-619 raising the argument that Elmhurst is exempt under BIPA pursuant to Section 14/25(c), or to otherwise answer or respond to Plaintiff's Complaint.
3. The Section 2-619.1 Motion is entered and continued.

Submitted by: CHRISTOPHER ALLEN
Attorney Firm: MCDONALD HOPKINS LLC
DuPage Attorney Number: 21532                    File Date: 06/09/2021
Attorney for: ELMHURST UNIVERSITY          Entered:
Address: 300 N. LASALLE STREET, SUITE 1400   _____
City/State/Zip: CHICAGO, IL, 60654           JUDGE BRYAN CHAPMAN
Phone number: 312-642-6922                   Validation ID : DP-06092021-0856-29940
Email : callen@mcdonaldhopkins.com
                                             Date: 06/09/2021

American Legal Forms®
Legal Style / ph 312-332-1922
www.americanlegalforms.com

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JANE DOE, individually and on behalf of a class of similarly situated individuals, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| NORTHWESTERN UNIVERSITY, | ) ) ) |
| Defendant. | ) ) |

Case No. 21 C 1579

Judge Joan H. Lefkow

## ORDER

Defendant Northwestern University's motion to dismiss (dkt. 15) is granted. This case is terminated. See statement.

## STATEMENT

Plaintiff Jane Doe attends Northwestern University. (Dkt. 1-1 ¶¶ 1, 34). Throughout the COVID-19 pandemic, Northwestern required her and other students to take exams outside of the classroom using third-party online remote proctoring tools. (*Id.* ¶ 2). These tools capture and store various user data, including "biometric" data. (*Id.* ¶¶ 3–4). Doe filed an action on behalf of herself and others similarly situated alleging that Northwestern's use of these third-party proctoring tools violated the Illinois Biometric Information Privacy Act (BIPA), 740 Ill. Stat. Comp. 14/1 *et seq*. (*Id.* ¶¶ 42-48, 50-61.)[1]

Northwestern moves to dismiss the action under Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion challenges a complaint for failure to state a claim upon which relief may be granted. In ruling on such a motion, the court accepts as true all well-pleaded facts and draws all reasonable inferences from those facts in the plaintiff's favor. *See Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555 (2007).

---

[1] Northwestern removed the action to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, on the basis of class size, minimal diversity, and an adequate amount in controversy. (Dkt. 1.) Venue is proper under 28 U.S.C. § 1446.

In this diversity action, Illinois law controls. *See In re: Emerald Casino, Inc.*, 867 F.3d 743, 765 (7th Cir. 2013). Where, as here, there is no controlling decision by the Illinois Supreme Court on the relevant issue, *see Zahn* v. *N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016), the court gives "proper regard" to lower Illinois court decisions, *see Blood* v. *VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012).

BIPA regulates the collection, usage, and general handling of biometric information by private entities. Section 25(c) of BIPA, however, exempts from coverage "a financial institution . . . that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 [(GLBA)] and the rules promulgated thereunder." 740 Ill. Stat. Comp. 14/25(c). Northwestern argues that Doe's complaint must be dismissed because it is a financial institution subject to Title V of GLBA and therefore exempt under section 25(c).

Doe raises several arguments to avoid dismissal. First, Doe argues that the exemption does not apply because neither Northwestern nor any university is a "financial institution" under BIPA. BIPA does not separately define the term "financial institution," and Doe does not argue for adopting any particular definition. Instead, Doe argues that "financial institution" simply cannot include universities based on definitions from dictionaries and other statutes. But the only case addressing the applicability of the 25(c) exemption to a university, *Jane Doe* v. *Elmhurst University*, No. 20-1400 (Cir. Ct., 18th Judicial Cir., Du Page Cty., Ill.), ruled that the plain meaning of "financial institution" in BIPA is the same as in GLBA, which includes universities. (Dkt. 28-24–26.)

Relatedly, Doe argues that section 25(c) suggests a two part-test and the court must first determine that Northwestern is a "financial institution" before looking at whether it is subject to Title V of GLBA. Doe argues that this two-step inquiry supports its theory that BIPA's definition is different from that of GLBA. In support, Doe cites *Stauffer* v. *Innovative Heights Fairview Heights, LLC*, 480 F. Supp. 3d 888 (S.D. Ill. 2020), but this case did not set out a separate definition for "financial institution," as Doe suggests; it merely recognized that some financial industry defendants are not subject to Title V of GLBA and therefore are not exempt under section 25(c). *Id.* at 902.

Second, Doe argues that exempting Northwestern under section 25(c) would contradict BIPA's remedial purpose. Doe uses BIPA's legislative history to argue that section 25(c) was only meant to apply to "banks that are covered under federal law," not universities. Il. H.R. Tran. 2008 Reg. Sess. No. 276 at 249 (May 30, 2008). But there is no need to consult legislative history where section 25(c)'s plain language makes clear that it applies to any "financial institution," not just banks. *See United States* v. *Melvin*, 948 F.3d 848, 852 (7th Cir. 2020). Further, the exemption does not undermine BIPA's remedial purpose because the exempted financial institutions are still subject to GLBA's privacy scheme.

Next, Doe argues that Northwestern has not established that it is subject to Title V of GLBA and therefore exempt. Title V of GLBA governs the treatment of nonpublic personal information about consumers by financial institutions. 15 U.S.C. §§ 6801–09. Under GLBA, a financial institution is "any institution the business of which is engaging in financial activities." *Id.* § 6809(3)(A). The Federal Trade Commission (FTC), which promulgates rules pursuant to GLBA, considers colleges and universities to be financial institutions subject to Title V where "such institutions appear to be significantly engaged in lending funds to consumers." Fed. Trade Comm'n, Privacy of Consumer Financial Information, Final Rule, 65 Fed. Reg. 33,648 (May 24, 2000). Courts defer to an agency's construction of the statute it is charged with administering so long as the construction is reasonable. *See Jeffers* v. *Comm'r of Internal Revenue*, 992 F.3d 649, 564 (7th Cir. 2021). Given GLBA's broad definition, the FTC's interpretation that universities that lend funds to consumers are financial institutions under GLBA is reasonable. As to Northwestern's status as an institution of higher education that "significantly engage[s] in lending funds," publicly available government documents confirm it to be so, *e.g.*, Fed. Student Aid Office, U.S. Dept. of Educ., Protecting Student Information (July 29, 2015), and Doe cites nothing to the contrary.

Doe also argues that Northwestern is not subject to Title V of GLBA because it complies with FERPA. Doe points to *N.Y. State Bar Ass'n* v. *Fed. Trade Comm'n*, 276 F. Supp. 2d 110, 144 (D.D.C. 2003), which mentions that universities that comply with the Federal Educational Rights and Privacy Act (FERPA) are "exempt" from GLBA requirements. But universities that comply with FERPA are deemed in compliance with, not exempt from, GLBA, *see* 16 C.F.R. § 313.1(b); 12 C.F.R. § 1016.1(b)(2)(ii), and the court in *N.Y. State Bar Ass'n* was merely describing the regulations, not articulating any new exemptions. 276 F. Supp. 2d at 144. Doe asserts that Northwestern's compliance with FERPA does not justify its exemption from BIPA because FERPA does not contain equivalent privacy protections. Nevertheless, the plain language of section 25(c) exempts Northwestern as a financial institution subject to Title V of GLBA, and the court must apply it as such.

Last, Doe's argument that applying 25(c) to Northwestern could render BIPA unconstitutional "special legislation" is unavailing. Similar arguments have been rejected by other courts. *See Bryant* v. *Compass Grp. USA, Inc.*, 503 F. Supp. 3d 597, 601 (N.D. Ill. 2020); *Stauffer*, 480 F. Supp. 3d at 902. Doe offers no rationale warranting a contrary result here.

For these reasons, Northwestern is exempt from BIPA under section 25(c). The motion to dismiss is granted and the complaint dismissed with prejudice.

Date: February 22, 2022

U.S. District Judge Joan H. Lefkow

3

American Legal Forms®
Legal Style / ph 312-332-1922
www.americanlegalforms.com



# Financial Crimes Enforcement Network
## Department of the Treasury

MSB Registration Status Information

Date: 03/11/2022

The inclusion of a business on the MSB Registrant Search Web page is not a recommendation, certification of legitimacy, or endorsement of the business by any government agency.

The MSB Registrant Search Web page, which is updated on a weekly basis, contains entities that have registered as Money Services Businesses (MSBs) pursuant to the Bank Secrecy Act (BSA) regulations at 31 CFR 1022.380(a)-(f), administered by the Financial Crimes Enforcement Network (FinCEN).

Information contained on this site has been provided by the MSB registrant. FinCEN does not verify information submitted by the MSB. Information provided on this site reflects only what was provided directly to FinCEN. If an error or incomplete information is detected on this site, the registrant should follow the appropriate instructions for correcting a Registration of Money Services Business (RMSB) form.

MSB Registration Number: 31000182781631
Registration Type: Renewal
Legal Name: BAM Trading Services Inc.
DBA Name: Binance.us

Street Address: 1 Letterman Drive Bldg C Suite C3-800
City: San Francisco
State: CALIFORNIA
Zip: 94129-1492

MSB Activities:
    Money transmitter
States of MSB Activities:
    Alabama, Alaska, American Samoa, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District Of Columbia,
    Federated States Of Micronesia, Florida, Georgia, Guam, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas,
    Kentucky, Louisiana, Maine, Marshall Islands, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri,
    Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands,
    Ohio, Oklahoma, Oregon, Palau, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee,
    Texas, Utah, Vermont, Virgin Islands, US, Virginia, Washington, West Virginia, Wisconsin, Wyoming
All States & Territories & Foreign Flag: All States/Territories

Number of Branches:
Authorized Signature Date: 02/03/2021
Received Date: 02/04/2021