UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CORY DAVIS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>JUMIO CORPORATION, a Delaware corporation,<br><br>*Defendant*. | Case No.: 1:22-cv-00776<br><br>Honorable Andrea R. Wood |

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

**INTRODUCTION**

When Plaintiff Cory Davis ("Plaintiff") signed up to trade cryptocurrencies using the Binance smartphone application, it asked him to verify his identity by submitting a picture of himself. The Binance app incorporates identity-verification software from Defendant Jumio Corporation ("Jumio" or "Defendant"). Jumio requires users to upload an image of their face, from which Jumio extracts biometric information. But Jumio does not alert individuals like Davis to this collection of biometric identifiers or seek to obtain informed consent to this collection. Thus, Jumio's actions are unlawful under Illinois law, a fact Jumio is well aware of, as it recently settled a case under Illinois's Biometric Information Privacy Act ("BIPA"), 740 ILCS 14, for similar conduct.

Jumio seeks dismissal of this action under the BIPA's carveout for federally regulated financial institutions, *see* 740 ILCS 14/25(c), and on grounds that Davis's claim results in an impermissible extraterritorial application of the BIPA. Neither argument can carry the day. As to section 25(c) of the BIPA, the short answer is that Jumio is not itself a financial institution. Because its software has been incorporated into a Binance product, Jumio contends that application of the BIPA would result in application to Binance. But that contention is not persuasive. Binance would incur no liability here, and there is no textual hook for expanding the scope of section 25(c) to non-financial institutions.

As to extraterritoriality, Jumio's argument is at the very least premature. As Illinois Supreme Court cases make clear, the extraterritoriality inquiry focuses on the particular facts of the transaction and is best resolved on a developed record. Regardless, what the facts do show is that Davis, an Illinois resident and Illinois user of the Binance app, uploaded a photo from his residence, along with a picture of his driver's license that identified him as an Illinois resident.

This is enough to show that the transaction here bears a sufficient connection to Illinois that the BIPA applies.

The motion to dismiss should be denied.

## BACKGROUND

Illinois's Biometric Information Privacy Act "codifie[s] that individuals possess a right to privacy in and control over their biometric identifiers." *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1206 (Ill. 2019). One way in which the Act provides Illinoisans with that control is by "giving them the power to say no by withholding consent." *Id.* Specifically, section 15(b) of the law requires an entity that wishes to collect biometric identifiers, including a "scan of … face geometry," 740 ILCS 14/10, to first obtain informed and written consent authorizing that collection. *See id.* § 15(b); *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 619 (7th Cir. 2020).

Defendant Jumio has created an identity-verification process that can be incorporated into any smartphone application. (Compl. ¶ 22.) The user of an app that incorporates Jumio's technology is required to upload a picture of their driver's license and a selfie. (*Id.* ¶¶ 21-22) From these images, Jumio creates a "biometric template" of the uploader's face, and uses "facial biometrics" to compare the face in the selfie with the face in the driver's license. (*Id.* ¶ 22 & Fig. 1.) To its business clients, Jumio refers to this process as "biometric-based verification." (*Id.* ¶ ¶ 23.) But at no point during this process are app users ever asked to provide consent to Jumio's collection of their biometric identifiers. (*Id.* ¶ 27.)

One company that has embedded Jumio's software into its application is Binance. (*Id.* ¶¶ 31-33.) Binance is an online cryptocurrency marketplace. (*Id.* ¶ 31.) When Plaintiff Cory Davis signed up to use the Binance app to trade cryptocurrencies, he was required to use Jumio's service to verify his identity. (*Id.* ¶ 33.) Thus, Jumio created a biometric template for Davis. (*Id.*)

But Jumio did not inform Davis that it would be collecting his information. (*Id.* ¶ 34.) Nor did Davis ever execute a written release authorizing the collection of his biometric identifiers. (*Id.* ¶ 35.) Davis therefore brings this claim under section 15(b) of the Act, on behalf of himself and all other Illinois residents who used apps with Jumio software embedded and from whom Jumio collected their biometric identifiers without consent. (*Id.* ¶ 38.)

## ARGUMENT

On a motion under Fed. R. Civ. P. 12(b)(6), the Court takes all factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Jumio does not contest that Davis has sufficiently alleged that it collected his biometric identifiers without first obtaining informed and written consent. Instead, it raises only two narrow arguments for dismissal under Rule 12(b)(6). The first relies upon section 25(c) of the BIPA, which establishes that "[n]othing in [the BIPA] shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder." Because, Jumio says, Binance is such a financial institution, holding Jumio responsible for its own conduct would result in an impermissible application of the law to Binance. Second, Jumio suggests that Davis's claim results in an impermissible extraterritorial application of the BIPA, requiring dismissal. Neither argument persuades.

**A.      The GLBA exception does not apply to Davis's claim against Jumio.**

Jumio contends that Davis's claim fails under section 25(c) of the BIPA, which prohibits application of the BIPA "in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules

3

promulgated thereunder." But Jumio is not a financial institution, nor is it subject to the Gramm-Leach-Bliley Act, or any associated rules. Thus, the GLBA exception has no application here.

First, as a procedural matter, Jumio's argument is premature. Jumio's argument raises the GLBA exemption as an affirmative defense. "An affirmative defense … seeks to defeat the plaintiff's cause of action by a denial or confession and avoidance." *Carmichael v. Union Pac. R.R. Co.*, 155 N.E.3d 386, 392 (Ill. 2019). The GLBA exemption is in the nature of an avoidance. It is a "general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits." *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948); *see also Schaeffer ex rel. Schaeffer v. Weast*, 546 U.S. 49, 57 (2005). But, of course, Plaintiffs need not plead around affirmative defenses, or allege facts to make any kind of showing with respect to an issue on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216-17 (2007); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

Here, the complaint itself contains no allegations that would establish the underlying predicate for Jumio's defense, i.e., that Binance is subject to Title V of the GLBA. Jumio itself points to filings in a different case, although the most that can be established through judicial notice is that Binance claims to be subject to the GLBA in an attempt to avoid liability under the BIPA. *See, e.g.*, *Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 895 (N.D. Ill. 2020) ("A court may generally take judicial notice of another court or agency's decision, but only for the limited purpose of establishing the fact of such a decision, not for the truth of the statements asserted in the decision."). Similarly, the fact that Binance is registered as a money transmitter shows only that Binance believes that step is necessary for compliance with federal law. Jumio does not point to anything which suggests that the FTC or the Consumer Financial Protection

Bureau ("CFPB") believes that cryptocurrency exchanges are subject to Title V of the GLBA, such as an opinion letter, or a regulation.[1] And while Jumio points to the *PayPal* enforcement action, the citation is made merely by analogy. There is no reason to believe that this defense can be established based solely on the belief of a potentially regulated entity. Courts—including in BIPA cases—have found this issue to be premature at the pleading stage. *Stauffer v. Innovative Heights Fairview Heights, LLC*, No. 3:20-CV-00046-MAB, 480 F.Supp.3d 888, 902 (S.D. Ill. Aug. 19, 2020) (rejecting argument, on motion to dismiss in BIPA case, that defendant fell into BIPA's GLBA exemption). Thus, the argument should be rejected on a motion to dismiss.

Regardless, even assuming that Binance is a "financial institution … that is subject to Title V of the federal Gramm-Leach-Bliley Act," *Jumio* is plainly not, which is what matters here. On its face the GLBA exemption applies only to financial institutions. Indeed, that is how it was presented in the legislature. *See* Statement of Rep. Ryg, Illinois House, 276th Legislative Day, 95th Session, at 249 (May 30, 2008) ("It provides exemptions as necessary for … banks that are covered under federal law."). Even assuming that Binance is governed by the GLBA, application of the BIPA to Jumio would not, in any manner, result in application of the BIPA to Binance. For instance, holding Jumio liable for its own collection of biometric information would not result in liability running to Binance or any of its affiliates. Holding Jumio liable for its actions would have no impact whatsoever on Binance's ability to comply with its obligations under federal law. Holding Jumio liable here would not require Binance to develop a retention policy for biometric identifiers and information, would not prohibit Binance from profiting from biometrics, and would not prohibit Binance from redisclosing any biometrics it has obtained.

---

[1] *See* Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, Title X, 124 Stat. 1983 (2010) (granting the CFPB rulemaking authority for Subtitle A—Disclosure of Nonpublic Personal Information—of Title V of GLBA).

Much like the principle that an agent does not acquire the principal's immunity from suit, *see* Restatement (Second) of Agency § 347, the fact that Binance cannot be sued under the BIPA if it is a covered financial institution does not mean that any entity working with Binance acquires access to the same exemption. *See also Sosa v. Onfido, Inc.*, 8 F.4th 631, 641-42 (7th Cir. 2021) (entity that provided identity-verification services within mobile application could not enforce arbitration agreement between user and application developer); *Mosby v. Ingalls Mem'l Hosp.*, 2022 IL App (1st) 200822, ¶ 40 (construing healthcare carveout from BIPA to apply only to data taken from patients, not data collected from hospital employees in the course of providing services to patients).

Jumio contends that it can receive the protections of the GLBA exemption because the phrase "in any manner" is broad. But it is not that broad. Jumio relies on examples from the criminal and workers' compensation contexts. Davis disputes that any relevant lessons can be gleaned from these cases. They arise in inapplicable factual contexts and address different legal regimes.

But to the extent they do provide guidance for decision here, Jumio's cases favor Davis. For instance, the car-forfeiture line of cases Jumio invokes, the relevant statutory phrase makes objects used to "in any manner to facilitate" drug possession forfeitable. Jumio's cases turn not on the supposedly expansive nature of the phrase "in any manner," but instead on the word "facilitate," that is, a car must somehow contribute to the defendant's ability to possess the drugs to be forfeitable. *People v. One 1986 White Mazda Pickup Truck, VIN JM2UF1118G0577930*, 621 N.E.2d 250, 253 (Ill. App. Ct. 1993); *Scott v. Glumac*, 3 F.3d 163, 165-66 (7th Cir. 1993). By analogy to this case, the key word would be "apply," that is, the key question would be whether holding Jumio liable results in any way in an *application* of the statute to Binance. The

6

answer is clearly no. And in Jumio's workers' compensation example, the question is whether the procedure imposed by the employer poses any kind of burden on the *worker*. *See Stevenson v. FedEx Ground Package Sys., Inc.*, 69 F. Supp. 3d 792, 796 (N.D. Ill. 2014). If this example can be related to this case, the question is whether any new obligation is imposed on a federally regulated financial institution by virtue of this lawsuit against Jumio. Again, the answer is no.

Jumio suggests that unless the phrase "in any manner" is construed to cover indirect application of the BIPA to GLBA-regulated financial institutions, it is surplusage, since "in any manner" is not used in other subsections of section 14/25. (Dkt. 15, Def.'s Mot. to Dismiss Br., at 4.) But that is quite a leap. First, it is far more likely that phrase "in any manner" was included in simple acknowledgement of GLBA's express preemption provisions, 15 U.S.C. § 6807(a), (b)—which is not an issue present with the government contractor exemption in section 25(e). *See Stauffer*, 480 F.Supp.3d at 902 ("[T]he Illinois legislature may have, rationally, concluded that failing to exclude those financial institutions subjected to GLBA's reporting standards risked federal preemption of BIPA."). Jumio presents no legitimate argument that the presence of the language "in any manner" must be equated to "even indirectly to third-party vendors of." Second, the other subsections of section 25 are drafted differently precisely because of the way that GLBA preempts inconsistent state law. The language in sections 25(b) and (d)—"nothing in this Act shall be construed to conflict with"—is both unnecessary with respect to the GLBA and arguably would be inoperative. Title V of the GLBA already contains language which requires courts to construe inconsistent state laws as superseded by the GLBA, 15 U.S.C. § 6807(a), but, more importantly, Title V of the GLBA also establishes that any state law that provides individuals greater protection than the GLBA "is not inconsistent" with the GLBA, *id.* § 6807(b). The BIPA, which addresses privacy in a type of information not covered by the GLBA, plainly

7

provides greater protection, and is therefore to be construed as consistent with the GLBA. Thus, the Illinois legislature could not have sensibly used the same language in sections 25(b) and (d) in section 25(c).

In sum, Davis's claim against Jumio is not prohibited by section 25(c) of the BIPA.

**B.     Davis's claim does not require extraterritorial application of the BIPA.**

Next, Jumio contends that Davis's claim must be dismissed because it violates the rule against extraterritorial application of Illinois law. This argument also fails.

Under Illinois law, "a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005) (citation omitted). It is generally agreed that nothing in the BIPA supports extraterritorial application of the law. Therefore, the BIPA applies "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id.* at 854. There is no bright-line test for determining whether a transaction occurs primarily and substantially in Illinois, and each case must be decided on its own facts. *See Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *6 (N.D. Ill. Sept. 15, 2017). Thus, courts rarely resolve extraterritoriality challenges on the pleadings. *See id.*; *Vance v. Int'l Business Machs. Corp.*, No. 20 C 577, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020); *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2018); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1101-02 (N.D. Ill. 2017); *In re Clearview AI, Inc. Priv. Litig.*, No. 21-CV-0135, 2022 WL 444135, at *4 (N.D. Ill. Feb. 14, 2022) ("That said, the Court, recognizes that the application of the extraterritoriality doctrine is a fact intense inquiry that is best left for summary judgment once the parties have completed discovery."); *LaBarre v. Ceridian HCM, Inc.*, No. 2019-CH-06489, at 12 (Cir. Ct. Cook Cty. Mar. 4, 2021) ("The Court finds discovery is needed to

8

determine to what extent Ceridian's alleged acts occurred in Illinois. There are simply too many unknowns at this stage of the proceedings, which prevent the Court from making a determination whether BIPA is being applied extraterritorially in this case.") (attached hereto as Exhibit 1); *cf. Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1091 (N.D. Ill. 2019) ("PAR's physical location and property holdings, the location of its servers, and the identity of its customers are not determinative of the Act's application; these factors have little to do with the transaction and conduct at issue—the collection of plaintiff's fingerprint" and granting plaintiff leave to amend to allege her fingerprint was collected while working at a restaurant in Illinois).

What facts are available at this stage do not preclude application of Illinois law here. Davis lives in Cook County. (Compl. ¶ 11.) Discovery will show that he signed up for Binance, and thus had his biometric identifiers collected by Jumio, from Cook County, as well.[2] Moreover, because Jumio analyzed a picture of his driver's license (Compl. ¶ 33), Jumio knew or had reason to know that it was analyzing the face of and collecting biometric data from an Illinois resident.

Similar fact patterns have been held sufficient to invoke Illinois law. For instance, in a case involving the use of Facebook in Illinois by Illinois residents, the district court in *Patel v. Facebook, Inc.* described the case as "deeply rooted in Illinois." 326 F.R.D. 535, 547 (N.D. Cal. 2018). And in *Rivera*, the court concluded that allegations that Google "[made] face templates of Rivera and Weiss [from] photographs uploaded automatically from Google Droid devices in Illinois" were sufficient at the pleading stage to "deem the asserted violations as having

---

[2] At the motion to dismiss stage, the Court may rely on facts asserted in opposition to a motion to dismiss that elaborate on facts alleged in the Complaint. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

happened in Illinois." 238 F. Supp. 3d at 1101-02. The facts here are materially indistinguishable from those present in *Patel* and *Rivera*. Thus, Jumio's argument fails.

Jumio relies upon *McGoveran v. Amazon Web Services, Inc.*, No. 20-1399-LPS, 2021 WL 4502089 (D. Del. Sept. 30, 2021), but that case is both an outlier and distinguishable. *McGoveran* involved allegations regarding two companies: Amazon, which provided cloud-based call centers, and Pindrop, which provided biometric voice-printing services. *Id.* at *1. The two plaintiffs alleged that the defendants unlawfully created voice prints of them when, from Illinois, they called John Hancock, which utilized the services of Amazon, and by extension Pindrop. *Id.* at *2. The district court dismissed the claim on extraterritoriality grounds, distinguishing *Monroy* and *Rivera* on the ground that the defendants in those cases were directly interacting with Illinois-based customers, whereas Amazon and Pindrop were merely providing services to non-Illinois businesses. *Id.* at *5-6. In the first place, it is not clear why that should matter to whether the claim bears a sufficient connection to Illinois. The claim still arises from an Illinois resident's use of a service from within Illinois, as did the claims in *Rivera* and *Patel*. That the defendants in *McGoveran* were vendors is surely relevant to personal jurisdiction, as the Southern District of Illinois held. *See* 488 F. Supp. 3d 714 (S.D. Ill. 2020). But it's unclear why that analysis should be ported into the extraterritoriality inquiry. *See Volodarskiy v. Delta Air Lines, Inc.*, 987 F. Supp. 2d 784, 792 n.6 (N.D. Ill. 2013) ("Whether a law can be applied extraterritorially is a merits question, not a question of jurisdiction.").

In any event, Jumio attempts to liken itself to Amazon and Pindrop, but the analogy fails. In *McGoveran*, Amazon received call data from John Hancock, and then passed that data on to Pindrop. *See McGoveran*, 488 F. Supp. 3d at 717 (describing allegations in same case in greater detail). Jumio, by contrast, interacts directly with the Binance user, even if the user has no idea

10

that Jumio is involved. (*See, e.g.*, Compl. ¶¶ 21, 22.) As the relevant Jumio privacy policy describes, Jumio collects information, including biometric information, about *users* of Jumio's identity-verification services.[3] That is, Jumio describes individuals like Davis as users of its own services.

Of equal importance, Jumio does not cite to any contrary facts from the Complaint or other judicially noticeable documents that would defeat the application of Illinois law. Jumio does takes pains to emphasize its out-of-state headquarters, but that is obviously insufficient to carry the day. The law itself notes that it was passed because "national corporations" were testing biometric technologies in Chicago. 740 ILCS 14/5; (Compl. ¶ 12.) Indeed, Pay By Touch, the company whose bankruptcy precipitated the law, was a California company collecting biometrics from Illinois residents. Thus, "it is reasonable to infer that the General Assembly contemplated BIPA's application to individuals who are located in Illinois, even if some relevant activities occur outside the state." *Patel*, 932 F.3d at 1276.

Thus, at this stage, there is no basis to dismiss the Complaint on grounds of extraterritoriality.

## CONCLUSION

The motion to dismiss should be denied.

Respectfully submitted,

**CORY DAVIS**, individually and on behalf of all others similarly situated,

Dated: April 12, 2022　　　　　　　　　　By: /s/ Schuyler Ufkes
　　　　　　　　　　　　　　　　　　　　　　　One of Plaintiff's Attorneys

---

[3]　*Jumio's Privacy Policy*, available at https://www.jumio.com/legal-information/privacy-policy/jumio-corp-privacy-policy-for-online-services.

11

J. Eli Wade-Scott
ewadescott@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff Cory Davis*

12