**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CORY DAVIS, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00776 |
| Plaintiff, | Honorable Andrea R. Wood |
| v. | |
| JUMIO CORPORATION, a Delaware corporation, | |
| Defendant. | |

**REPLY IN SUPPORT OF JUMIO CORPORATION'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

## INTRODUCTION

Plaintiff Cory Davis ("Davis") alleges he used Jumio's software to verify his identity on the Binance mobile application (the "Binance App") so that he could become a Binance member and participate in the Binance "cryptocurrency marketplace." Compl. ¶ 31. Binance is a "financial institution" subject to the Gramm-Leach-Bliley Act of 1999 (the "GLBA") because a "cryptocurrency marketplace" (1) exchanges and transfers money and (2) accepts and transmits currency or currency substitutes. And applying BIPA to Jumio would be to unlawfully apply BIPA "in any manner" to Binance, 740 ILCS 14/15(c), because Jumio's software is embedded into the Binance App, so Jumio could give notice and obtain consent only through the Binance App. These defects cannot be cured, and Davis's Complaint must be dismissed with prejudice pursuant to BIPA's GLBA exception.

Alternatively, the Complaint should be dismissed because BIPA does not apply extraterritorially, and Davis has not alleged facts showing that any relevant conduct by Jumio occurred primarily and substantially in Illinois.

## ARGUMENT

**A.   Davis's claim is barred by BIPA's GLBA exception.**

The GLBA exception bars Davis's claim because the Complaint establishes that Binance is a financial institution subject to the GLBA, and that to apply BIPA to Jumio in this case would be to unlawfully apply it "in any manner" to Binance. 740 ILCS 14/25(c).

**1.   Binance is a financial institution subject to the GLBA.**

The GLBA defines "financial institution" to include institutions whose business is (1) "exchanging, transferring, investing for others, or safeguarding money," or (2) "money transmission services"—e.g., the acceptance and transmission of currency or currency substitutes. 15 U.S.C. § 6809(3)(A); 12 U.S.C. § 1843(k)(4)(A); 12 C.F.R. § 225.86(a)(2)(v); *see also* ECF No. 15 at 5-6 (describing interplay of GLBA definitions). Davis alleges that Binance is a "cryptocurrency marketplace." Compl. ¶ 31. Cryptocurrency is, by definition and common understanding, "[a] digital or virtual currency that is . . . designed to function as a medium of

1

exchange." *Cryptocurrency*, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, by alleging that Binance is a "cryptocurrency marketplace," Davis establishes that Binance is in the business of (1) exchanging and transferring money and (2) accepting and transmitting currency or currency substitutes. Judicially noticeable facts also support this conclusion. For instance, Binance describes itself as a financial institution subject to the GLBA in court filings, and it is registered as a money transmitter with the U.S. Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN"). *See* ECF No. 15, Exs. 1 & 4.

Tellingly, Davis does not dispute that a "cryptocurrency marketplace" like Binance is in the business of exchanging and transferring money and accepting and transmitting currency or currency substitutes. This failure to respond deems the argument admitted. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). And Davis's other arguments against characterizing Binance as a financial institution are unpersuasive.

First, Davis contends that it would be premature for this Court to consider whether Binance is a financial institution subject to the GLBA because that is part of an affirmative defense to BIPA. *See* ECF No. 18 at 4. But it is well-established that "when all relevant facts are presented, the court may properly dismiss a case before discovery . . . on the basis of an affirmative defense." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citations omitted). And here, the facts establishing that Binance meets the statutory definition of financial institution are clearly alleged in the Complaint. Accordingly, as this Court recently recognized, while Davis "normally would not have to anticipate the affirmative defense provided by the" GLBA exemption, dismissal is appropriate because his "own Complaint establishes that [the exception] applies." *Diamond Residential Mortg. Corp. v. Liberty Surplus Ins. Corp.*, No. 19-CV-06439, 2020 WL 7027652, at *5 (N.D. Ill. Nov. 30, 2020) (Wood, J.). In short, by calling Binance a "cryptocurrency marketplace," Compl. ¶ 31, Davis "pleads [himself] out of court." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

Next, Davis contends that "Jumio does not point to anything which suggests that the FTC

or the [CFPB] believes that cryptocurrency exchanges are subject to" the GLBA. ECF No. 18 at 4–5. This argument is a straw man. The definition of "financial institution" under the GLBA does not require a finding by the FTC or CFPB that a specific type of business qualifies. It is instead enough under the GLBA's definition that Binance exchanges or transfers money and accepts and transmits currency or currency substitutes. Moreover, the examples of financial institutions that the FTC *has* provided through regulation look very similar to Binance—for instance, the FTC provides examples of a "business that regularly wires money to and from consumers," and a "company acting as a finder in bringing together one or more buyers and sellers of any product or service for transactions that the parties themselves negotiate and consummate." 16 C.F.R. § 314.2(h)(2)(vi) & (xiii).[1] Similarly, as a cryptocurrency marketplace, Binance both electronically transmits cryptocurrency and allows parties to exchange it with one another.

Binance is a "financial institution" based on the facts that Davis alleges in his Complaint, and to conclude otherwise would be to ignore entirely the GLBA's definition of that term.

**2. To apply BIPA to Jumio in this case would be to unlawfully apply it to Binance "in any manner."**

Davis alleges that when he signed up to become a member of the Binance cryptocurrency exchange, the Binance App required him to verify his identity; that the Binance App "integrate[s]" and "embed[s]" Jumio software; and that he was "unaware [that he was] interacting with" Jumio. Compl. ¶ 3. He brings a single claim, that Jumio violated BIPA by failing to give notice or obtain consent for collection of his biometrics through the Binance App. But this claim must be dismissed with prejudice because through the claim Davis necessarily seeks to alter the operation of the Binance App, which integrates Jumio's software. This would unlawfully apply BIPA "in any manner" to Binance, and is barred by BIPA 14/25(c).

---

[1] As Plaintiff acknowledges, the FTC (among other entities) has rulemaking authority under the GLBA. ECF No. 18 at 5 n.1. The regulations the FTC creates under this authority are therefore "binding in the courts." *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001); *see also Trans Union LLC v. F.T.C.*, 295 F.3d 42, 50 (D.C. Cir. 2002) (concluding that the "broad rulemaking authority the GLBA confers on the FTC" renders its rules controlling).

The sweeping "in any manner" language of BIPA's GLBA exception is broader than any other BIPA exception. There are five such exceptions set forth in BIPA section 14/25, and none uses the broad language of the GLBA exception. BIPA 14/25(a) covers the admission of biometric data in court proceedings. BIPA 14/25(b) and (d) narrowly except only the application of BIPA when it "*conflicts with*" other laws. And BIPA 14/25(e) prohibits only the *direct* application of BIPA to *specific entities*. *Id.* ("Nothing in this Act shall be construed *to apply to* a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government.").

Davis not only ignores the uniquely broad "in any manner" language of the GLBA exception, he also argues that the Court should *replace* that language with the language the Legislature used in the *other* BIPA exceptions. First, Davis urges that "in any manner" be read to bar only application of BIPA that "conflicts with" the GLBA. But the Legislature clearly knew how to draft such an exception: It did so in BIPA 14/25(b) and (d) (both providing, "Nothing in this Act shall be construed *to conflict with* . . ."). And the Legislature chose to draft the GLBA exception more broadly. BIPA 14/25(c). Davis acknowledges that the GLBA exception in BIPA 14/25(c) is unique when it provides that BIPA shall not be applied "in any manner" to a financial institution, and that the HIPAA exception in BIPA 14/25(b) is phrased differently. But Davis argues that this difference in language is "because of the way that the GLBA preempts inconsistent state law." ECF No. 18 at 7. Yet the GLBA's preemption terms are the same as HIPAA's: Both provide that the laws supersede inconsistent state laws, and both allow more protective state laws that do not conflict. *Compare* 15 U.S.C. § 6807(a) (the GLBA "shall not be construed as superseding . . . any statute, regulation, order, or interpretation in effect in any State, except to the extent that such" law "is inconsistent with" the GLBA) (emphasis added), *with* 45 C.F.R. § 160.203 (requirements under HIPAA that are "contrary to a provision of State law preempt[] the provision of State law"); *compare also* 15 U.S.C. § 6807(b) (allowing "greater" protection than that of the GLBA), *with* 45 C.F.R. § 160.203 (allowing "more stringent" standards than those under HIPAA). The two laws have the same preemption scope, yet the

Legislature chose to use the broad "*in any manner*" language only in connection with the GLBA exception. This clearly reflects a legislative desire to give the GLBA exception a more sweeping effect than any other exception in BIPA. Finally, while Davis is correct that the GLBA allows states to pass more privacy-protective laws, it certainly does not require them to do so, and the fact that the Illinois legislature decided that BIPA should not apply "in any manner" to financial institutions proves that the legislature declined to do so with respect to BIPA.

Next, Davis argues that the GLBA exception only prevents BIPA from applying *directly* to financial institutions themselves. *See* ECF No. 18 at 5 ("holding Jumio liable . . . would not result in liability running to Binance or any of its affiliates.").[2] But again, the Legislature knew how to draft such a narrow prohibition, s*ee, e.g.*, BIPA 14/25(e) ("Nothing in this Act shall be construed to apply to . . . [listing entities]"), and it chose to make the GLBA exception broader than that. The GLBA exception does not merely exempt financial institutions from liability under BIPA. It instead speaks to how the statute may be applied to *any* defendant, not just the defendants in an enumerated list.

The GLBA prohibition on applying BIPA "in any manner" to Binance clearly bars the injunctive relief that Davis implicitly seeks in this case. *See* Compl. ¶ 53. **First,** it precludes any order compelling Jumio to give notice and obtain consent before collecting Davis's biometrics, because this could be accomplished only by modifying the Binance App. **Second,** it precludes an order enjoining Jumio from continuing to integrate its software into the Binance App, because such an order would require changes to the Binance App, and also deprive Binance of its chosen method of identity verification.

---

[2] It is by no means a safe assumption that applying BIPA to Jumio would not effectively impose liability on Binance. *See, e.g.*, Compl. ¶¶ 48–64, *Kuklinski v. Binance*, No. 21-cv-01425 (S.D. Ill. Nov. 12, 2021), ECF No. 1-1 (alleging that use of Jumio's identity verification software imposes BIPA liability on Binance); *cf. Osborne v. WeWork Cos., Inc.*, No. 19-CV-08374, 2022 WL 972320, at *5 (N.D. Ill. Mar. 31, 2022) (dismissing BIPA claims against WeWork because they were released under terms of settlement in the Prelipceanu v. Jumio matter and noting that it was "not at all surprising" that Jumio would insist on a release for its customers in light of potential indemnity provisions flowing the other way).

There is no basis for limiting the GLBA exception as Davis suggests; and the uniquely broad language of the GLBA exception must be given effect. Davis's claim would unlawfully apply BIPA "in any manner" to Binance. This is expressly barred by BIPA 14/25(c), and "it is clear that amendment would be futile" as this defect cannot be cured. *Doermer v. Callen*, 847 F.3d 522, 528 (7th Cir. 2017). The Complaint must be dismissed with prejudice.

**B.     Davis's claim must be dismissed because BIPA does not apply extraterritorially.**

Davis does not dispute that BIPA cannot be applied extraterritorially. And here, the Complaint alleges only that Davis is a citizen of Illinois and resident of Cook County. Compl. ¶¶ 8, 11. That is not enough to survive dismissal because if "[t]he only connection to Illinois" is the plaintiff's "status as a resident," the *Avery* test for whether conduct occurs primarily and substantially in Illinois is not satisfied. *Stroman Realty, Inc. v. Allison*, 2017 IL App (4th) 150501-U, ¶ 62 (applying *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85 (2005)); *see also Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 795 (N.D. Ill. 2007) (same).

In his opposition, Davis alleges entirely new facts in an attempt to avoid dismissal. Specifically, he now alleges that he signed up for Binance from Cook County, and that Jumio received a driver's license that showed his Illinois residency. ECF No. 18 at 9.

But these newly alleged facts are not enough. The fact that Davis signed up to become a *Binance* member through the *Binance* App does nothing to show any conduct by Jumio in Illinois. Indeed, the fact that Jumio is a service provider that deals with biometrics on behalf of Binance distinguishes this case from nearly all of the cases cited in Davis's opposition. *See In re Clearview AI, Inc. Consumer Priv. Litig.*, No. 21-CV-0135, 2022 WL 444135, at *4 (N.D. Ill. Feb. 14, 2022) (no service provider implicated by claims against defendants in connection with their collection of Illinois biometric data for their own product); *Vance v. Int'l Bus. Machs. Corp.*, No. 20 C 577, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020) (same); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1101–02 (N.D. Ill. 2017) (same); *Monroy v. Shutterfly, Inc.*,

No. 16 C 10984, 2017 WL 4099846, at *6 (N.D. Ill. Sept. 15, 2017) (same).[3] The same is true of Davis's new allegation that he provided an Illinois drivers' license. Even if Jumio was aware that Davis held an Illinois drivers' license, that still does not show any *conduct* by Jumio in Illinois.[4]

Finally, Davis is not helped by the sole service provider case that he cites because the plaintiff there alleged that "she scanned her fingerprints into [the service provider's systems] in Illinois," Memorandum Opinion & Order at 12, *LaBarre v. Ceridian HCM, Inc.*, No. 2019-CH-06489 (Cir. Ct. Cook Cnty. Mar. 4, 2021) (attached to opposition brief as ECF No. 18-1), which meant using a *physical* "time clock" and "scanner" that was sold by the service provider and located at the employee's restaurant. *Id.* at 1. Given that goods provided by the defendant were physically located in Illinois, it was logical for the court to conclude that discovery was necessary to determine "to what extent [the defendant's] alleged acts occurred in Illinois." *Id.* at 12. But there is no basis for such a conclusion here because Jumio's product is intangible software and there is nothing to suggest that Jumio, a California-based company, did anything at all in Illinois.

The claim against Jumio should thus be dismissed as in other, comparable service provider cases. Davis alleges only that he interacted with the *Binance* App in Illinois, and he fails to allege any facts (whether in his Complaint or in his opposition) to suggest that Jumio engaged in any conduct in Illinois—much less that it engaged in BIPA-violative conduct primarily and substantially in Illinois. *See, e.g.*, *McGoveran v. Amazon Web Servs., Inc.*, C.A. No. 20-1399, 2021 WL 4502089 at *4 (D. Del. Sept. 30, 2021) (dismissing claims against AWS and Pindrop in connection with voiceprint services provided to non-party call centers); *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1091 (N.D. Ill. 2019) (dismissing claims against provider of

---

[3] There was also no service provider at issue in the BIPA lawsuit against Facebook, but the decision that Davis cites is also inapposite because it is class certification decision, not a decision under Rule 12(b)(6). *See In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019).
[4] Knowledge of Illinois residency may help show personal jurisdiction, *see, e.g.*, *Tamburo v. Dworkin*, 601 F.3d 693, 706 (7th Cir. 2010), but as Davis points out, *see* ECF No. 18 at 10, this dispute is not over personal jurisdiction—it is about where Jumio's conduct occurred.

software used by non-party restaurants to track employees' time).

## CONCLUSION

For the reasons stated above and in its memorandum in support of its motion to dismiss, Jumio respectfully asks the Court to dismiss Davis's Complaint with prejudice.

Dated: April 26, 2022

Respectfully submitted,
 */s/ Susan D. Fahringer*

Susan D. Fahringer
Nicola C. Menaldo
Anna Mouw Thompson (Pro Hac Vice)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
SFahringer@perkinscoie.com
NMenaldo@perkinscoie.com
AnnaThompson@perkinscoie.com

Debra R. Bernard
**PERKINS COIE LLP**
110 North Wacker Drive
34th Floor
Chicago, IL 60606
Telephone: (312) 324-8400
Facsimile: (312) 324-9400
DBernard@perkinscoie.com

*Attorneys for Defendant Jumio Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 26, 2022, a copy of the foregoing **REPLY IN SUPPORT OF JUMIO CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** was filed electronically and sent to all counsel of record by operation of the Court's ECF system.

*/s/ Susan D. Fahringer*
Susan D. Fahringer