**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CORY DAVIS and DANIEL NEEDHAM, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 22-cv-00776 |
| v. | Honorable Andrea R. Wood |
| JUMIO CORPORATION, a Delaware corporation, | |
| Defendant. | |

**JUMIO CORPORATION'S ANSWER TO FIRST AMENDED COMPLAINT**

Defendant Jumio Corporation ("Jumio"), by and through undersigned counsel, hereby answers and sets forth its affirmative defenses to the First Amended Complaint of Plaintiffs Cory Davis and Daniel Needham ("First Amended Complaint"). All facts not specifically admitted are denied. For ease of reference, Jumio uses the section headings in the First Amended Complaint, but specifically denies any and all allegations and inferences of wrongdoing that may be contained in those section headings.

**[INTRODUCTION]**

Plaintiff Cory Davis and Daniel Needham ("Plaintiffs") brings this First Amended Class Action Complaint and Demand for Jury Trial against Defendant Jumio Corporation ("Jumio" or "Defendant") to put a stop to its unlawful collection, use, and storage of Plaintiffs' and putative Class members' sensitive biometric identifiers and/or biometric information (collectively referred to herein as, "biometric data"). Plaintiffs, for this First Amended Class Action Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief.

**ANSWER:** Jumio admits that Plaintiffs attempt to bring this action individually and on behalf of a class of purportedly similarly-situated individuals, as defined in Paragraph 48 of the First Amended Complaint. Jumio denies that any putative class is amenable to class certification or that Plaintiffs can satisfy the requirements of Federal Rule of Civil Procedure ("Rule") 23.

Jumio has insufficient knowledge or information to admit or deny the bases for Plaintiffs'

allegations and denies them on that basis. Except as expressly admitted, Jumio denies the

remaining allegations in the introductory paragraph of the First Amended Complaint.

## NATURE OF THE ACTION

1.      Defendant Jumio operates an identity verification service. Jumio contracts with various businesses to perform identity verification on those companies' users. According to its marketing materials, Jumio's identity verification software "uses AI, machine learning and biometrics to automate the verification process," Jumio claims its biometric-based identity verification software will allow its clients to more effectively deter fraud.

**ANSWER:** Jumio admits that it operates an identity verification product and that it

provides the product by contract to customers who use it to verify the identities of their users.

Any language quoted from Jumio's public-facing statements speaks for itself and requires no

response. Except as expressly admitted, Jumio denies the remaining allegations in Paragraph 1.

2.      Jumio's software is becoming increasingly popular in the digital era, as online business often requires consumers to establish their identities by submitting photographs of their driver's licenses or identification cards along with photographs of their faces. Jumio developed proprietary facial recognition software that can be used to scan those uploaded identification cards.

**ANSWER:** Jumio has insufficient knowledge or information to admit or deny the

allegations related to the popularity of its software or what businesses "often require[]" of

consumers, and denies them on that basis. Jumio admits that it uses a proprietary mix of AI,

machine learning, and other advanced technologies to provide its identity verification product to

customers. Except as expressly admitted, Jumio denies the remaining allegations in Paragraph 2.

3.      Businesses can integrate Jumio's software into their own websites or mobile apps so that they can establish a consumer's identity—for example, during a sign-up or registration process—without having to send the consumer to another location or webpage. In other words, Jumio's software is designed to be embedded into a business's website or app in such a way that consumers will likely be entirely unaware they are interacting with and providing their sensitive information to an unknown, third-party company, Jumio.

**ANSWER:** Jumio admits that its identity verification product can be integrated into a

customer's website or mobile app such that the customer can verify the identities of its users

without having to send the user to another location or webpage. The remaining allegations in

Paragraph 3 contain legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 3.

4. Utilizing biometric identification software exposes consumers to serious and irreversible privacy risks, especially here where it is not clear to consumers that Jumio is collecting their biometric data.

**ANSWER:** The allegations in Paragraph 4 contain legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 4.

5. Recognizing the need to protect its citizens from situations like these, the Illinois Legislature enacted the Biometric Information Privacy Act, 740 ILCS I 4/1, et seq. ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics.

**ANSWER:** Jumio admits that in the Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq*., the General Assembly stated that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS § 14/5(g). Jumio admits that BIPA defines the term "biometric identifier" to include a "scan of . . . face geometry." Jumio lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 5.

6. Despite this law, Jumio disregards consumers' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of BIPA. Specifically, Jumio has violated and continues to violate BIPA because it did not:

- Properly inform Plaintiffs and the Class members in writing that biometric data was being collected or stored;

- Properly inform Plaintiffs and the Class members in writing of the specific purpose and length of time for which their biometric data were being collected, stored, and used, as required by BIPA; or

- Receive a written release from Plaintiffs or the members of the Class to collect, capture, or otherwise obtain their biometric data, as required by BIPA.

**ANSWER:** Jumio denies the allegations in Paragraph 6.

7.      Accordingly, this Complaint seeks an Order:  (i) declaring that Defendant's conduct violates BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding damages to Plaintiffs and the proposed Class.

**ANSWER:**  Jumio admits that Plaintiffs seek an Order as described in Paragraph 7.

Jumio denies that Plaintiffs and the members of the proposed Class are entitled to any relief in

law, equity, or otherwise.  To the extent a further response is required, Jumio denies the

allegations in Paragraph 7.

## PARTIES

8.      Plaintiff Cory Davis is a natural person and citizen of the State of Illinois and Cook County.

**ANSWER:**  Jumio has insufficient knowledge or information to admit or deny the

allegations in Paragraph 8 and denies them on that basis.

9.      Plaintiff Daniel Needham is a natural person and was a citizen of the State of Illinois at all relevant times alleged herein. Plaintiff Needham is currently a citizen of the State of North Carolina.

**ANSWER:**  Jumio has insufficient knowledge or information to admit or deny the

allegations in Paragraph 9 and denies them on that basis.

10.     Defendant Jumio Corporation is a corporation existing under the laws of the State of Delaware, which is headquartered in Palo Alto, California.

**ANSWER:**  Jumio admits that it is a Delaware corporation with its headquarters in Palo

Alto, California.

## JURISDICTION AND VENUE

11.     This matter was removed from the Circuit Court of Cook County, Illinois. (*See* Dkt. 1.)

**ANSWER:**  Jumio admits that this matter was removed from the Circuit Court of Cook

County, Illinois.

12.     As the removing party, Defendant Jumio asserted that jurisdiction and venue are proper pursuant to the Class Action Fairness Act ("CAFA") and 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453. (*See id.*).

**ANSWER:** Jumio admits that in support of removal, it asserted that jurisdiction and venue are proper pursuant to the Class Action Fairness Act ("CAFA") and 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453.

## FACTUAL BACKGROUND

### I.    The Biometric Information Privacy Act.

13.    In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14l5(b).  Given its relative infancy, an overwhelming portion of the public became wary of this then-growing, yet unregulated, technology.  *See* 740 ILCS 1415.

**ANSWER:** Jumio admits that 740 ILCS § 14/5(b) states that "[m]ajor national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." Jumio admits that 740 ILCS § 14/5(d) states that an "overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information." Jumio lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 13.

14.    In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy.  That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records-which, as unique biometric identifiers, can be linked to people's sensitive financial and personal data-could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens.  The bankruptcy also highlighted the fact that most consumers who had used that company's biometric scanners were completely unaware that the scanners were not actually transmitting data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

**ANSWER:** Jumio has insufficient knowledge or information to admit or deny the allegations in Paragraph 14 and denies them on that basis.

15.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," the Illinois Legislature enacted BIPA in 2008.  *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 1415.

**ANSWER:** Jumio admits that BIPA was enacted in 2008. Jumio admits that the Illinois House Transcript, 2008 Reg. Sess., No. 276, attributes to Representative Kathy Ryg the statement that "we are in very serious need of protections for the citizens of Illinois when it comes to biometric information." Jumio admits that 740 ILCS § 14/5(g) states that the "public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." Jumio lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 15.

16.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

>     (1)     informs the subject … in writing that a biometric identifier or biometric information is being collected or stored;
>
>     (2)     informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
>     (3)     receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b) (emphasis added).

**ANSWER:** Jumio admits that 740 ILCS § 14/15(b) states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:  (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric

information or the subject's legally authorized representative." Jumio denies the remaining allegations in Paragraph 16.

17.      Biometric identifiers include retina and iris scans, voiceprints, scans of hand and fingerprints, and—most importantly here—face geometry.  *See* 740 ILCS 14/10.  Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual.  *See id.*

**ANSWER:**  Jumio admits that, subject to exceptions and exclusions, BIPA defines "[b]iometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS § 14/10.  Jumio admits that, subject to exceptions and exclusions, BIPA defines "[b]iometric information" to mean "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*  Jumio denies the remaining allegations in Paragraph 17.

18.      BIPA's narrowly tailored provisions place no absolute bar on the collection, sending, transmitting, or storing of biometric data.  For example, BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored.  Nor does BIPA limit to whom biometric data may be sent or transmitted, or by whom it may be stored.  BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

**ANSWER:**  Paragraph 18 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio responds that the language of BIPA speaks for itself and denies the remaining allegations in Paragraph 18.

## II.      Jumio Violates the Biometric Information Privacy Act.

19.      By the time BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time.  That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

**ANSWER:**  Jumio has insufficient knowledge or information to admit or deny the allegations in Paragraph 19 and denies them on that basis.

20.      Unfortunately, Jumio failed to address these concerns, and it continues to collect, store, and use consumers' biometric data in violation of BIPA by using facial recognition technology.  Worse yet, Jumio already litigated and settled a 2019 lawsuit alleging that Jumio collected, stored, and used consumer's biometric information without consent in violation of

BIPA.  Under the terms of the settlement, Jumio was required to come into compliance with BIPA, including the specific requirement to undertake commercially reasonable efforts to obtain consent from Illinois residents prior to collecting their biometric data.

**ANSWER:**  Jumio admits that the Circuit Court of Cook County, Illinois, entered a final order and judgment on July 21, 2020, granting final approval to a class action settlement in *Prelipceanu v. Jumio*, Case. No. 2018-CH-15883.  That final order and judgment expressly recognizes that "neither [the] Final Order and Judgment, nor the Settlement Agreement, nor the payment of any consideration in connection with the Settlement shall be construed or used as an admission or concession by or against [Jumio] ... of any fault, omission, liability, or wrongdoing, or of the validity of any of the Settled Claims."  Jumio admits that it agreed under the terms of the Settlement Agreement "to use all commercially reasonable means to comply with BIPA by implementing [certain] prospective relief," including by methods that "may consist of undertaking commercially reasonable efforts to cause Defendant's Customers that are subject to BIPA to obtain such consent," and by "requir[ing] in its standard terms and conditions with Customers that are subject to BIPA serving individuals in Illinois that [Jumio's] products may be used only in compliance with all applicable laws and regulations."  Jumio denies the remaining allegations in Paragraph 20.

21.    Despite BIPA being in force for over a decade and Jumio being bound by a prior settlement agreement to quickly bring itself into compliance with the law, Jumio persists to this day in violating BIPA through the operation of its biometric identification service.

**ANSWER:**  Jumio denies the allegations in Paragraph 21.

22.    Jumio partnered up with various businesses to verify their customers' identities including cryptocurrency marketplaces.  A consumer establishing his or her identity through Jumio must upload a copy of his or her identification card or document (such as a driver's license, state ID card, or a passport) and a photo of his or her face.

**ANSWER:**  Jumio admits that some of its customers are cryptocurrency marketplaces that use Jumio's identity verification product.  Jumio admits that a customer using Jumio's identity verification product may require users to upload a copy of their identification card or document and a photo of their face.  Except as expressly admitted, Jumio denies the remaining allegations in Paragraph 22.

23.    Jumio uses biometric facial recognition to establish consumers' identities.  Jumio advertises its biometric identification service as a tool to "verify that the ID document truly belongs to the person making the transaction." Jumio further highlights that its biometric dentification service is "a simple and familiar task for your users — all they have to do is take a selfie.  Jumio uses this selfie to create a biometric template and to perform advanced facial scanning.  We compare the user's facial biometrics to the photo on the ID document[.]" *See* Figure 1.

Jumio's biometric technology enables us to verify that the ID document truly belongs to the person making the transaction. Biometrics adds a critical layer of protection against stolen IDs and impersonation attacks.

It's a simple and familiar task for your users — all they have to do is take a selfie. Jumio uses this selfie to create a biometric template and to perform advanced facial scanning. We compare the user's facial biometrics to the photo on the ID document, and generate two scores: one for validity and one for facial similarity. The validity score tells whether the selfie is a valid, live selfie — not a prerecorded video, bot or deepfake. The similarity score, which is also powered by informed AI, indicates the confidence level that the image in the selfie matches the photo in the identity document. If the similarity score is too low, we alert you to the possibility of impersonation fraud.

**(Figure 1)**

**ANSWER:**  Any language and screenshots from Jumio's public-facing statements speaks for itself and requires no response.  Paragraph 23 contains legal conclusions to which no response is required.  To the extent a further response is required, Jumio denies the allegations in Paragraph 23.

24.    Throughout its various marketing materials, Jumio further reiterates its collection and use of biometric data in describing its "biometric-based verification" services.  *See* Figure 2.



**(Figure 2)**

**ANSWER:** Any language and screenshots from Jumio's public-facing statements speaks for itself and requires no response. Paragraph 24 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 24.

25. Consumers who establish their identities through a mobile app or a website using Jumio's identity software are not made aware that the process relies on biometric technology as opposed to, for example, a real person conducting the identification process or any other confirmation method.

**ANSWER:** Paragraph 25 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 25.

26. Although Jumio is well aware of Illinois consumers' privacy rights under BIPA, it failed to inform consumers of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

**ANSWER:** Jumio denies the allegations in Paragraph 26.

27. For example, consumers who create an account with one of Jumio's customers, Binance, are not informed that their biometric data will be collected by an unrelated third-party, Jumio. *See* Figures 3-4.



**(Figure 3)**



**(Figure 4)**

**ANSWER:**  Any screenshots from the user flow of a third party speaks for itself and requires no response.  Jumio admits that a third party doing business as "Binance" is a customer of Jumio's identity verification product.  Paragraph 27 contains legal conclusions to which no response is required.  To the extent a further response is required, Jumio denies the allegations in Paragraph 27.

28.     At no point during the sign-up process is a user given a written notice of the collection, purpose, or length of storage of their biometric data.  Users are also never asked to provide written consent to the collection, use, and storage of their biometric data.

**ANSWER:**  Paragraph 28 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 28.

29.     Consequently, users of Binance and other businesses utilizing Jumio's software unwittingly hand over their highly sensitive biometric data to a company whose very existence, let alone specific privacy terms, they are wholly unaware of.

**ANSWER:** Paragraph 29 contains legal conclusions to which no response is required.

To the extent a further response is required, Jumio denies the allegations in Paragraph 29.

30.     The Pay By Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Jumio's—where the consumers do not know their biometric data is being collected at all, let alone by an unknown third party—is so dangerous.  That bankruptcy spurred Illinois citizens and legislators to reach a critical conclusion:  it is crucial for people to understand that (1) they are providing biometric data in the first place; (2) who exactly is collecting it; (3) who it will be transmitted to; (4) for what purposes; and (5) for how long it will be kept.  But Jumio disregards these obligations, and instead unlawfully collects, stores, and uses consumer's biometric identifiers and information without proper notice or consent.

**ANSWER:** Jumio lacks knowledge or information sufficient to form a belief about the

truth of the allegations regarding Pay by Touch and alleged data breaches involving third parties.

Jumio denies the remaining allegations in Paragraph 30.

31.     Ultimately, Jumio's conduct disregards consumers' statutorily protected privacy rights in violation of BIPA.

**ANSWER:** Jumio denies the allegations in Paragraph 31.

## FACTS SPECIFIC TO PLAINTIFF DAVIS

32.     Plaintiff Cory Davis is a member of an online cryptocurrency marketplace called Binance.  In order to participate in the marketplace, consumers are required to confirm their identity.

**ANSWER:** Jumio has insufficient knowledge or information to admit or deny the

allegations in Paragraph 32 and denies them on that basis.

33.     For this purpose, this online marketplace, along with various other companies, partnered up with Jumio to identify its users using Jumio's biometric technology.

**ANSWER:** Jumio admits that a third party doing business as "Binance" is a Jumio

customer and uses Jumio's identity verification product.  Jumio has insufficient knowledge or

information to admit or deny the remaining allegations in Paragraph 33 and denies them on that

basis.

34.     On or around January 2021, Binance's mobile application required Plaintiff Davis to upload a photograph of his driver's license and a photograph of his face, so that he could be identified.  Jumio subsequently used biometric identification technology to extract his biometric

identifiers from each photograph, create two face templates, and compare the templates for a match.

**ANSWER:** Jumio has insufficient knowledge or information to admit or deny the allegations regarding Plaintiff's use of the Binance mobile application and the information he uploaded and denies them on that basis. Jumio admits that a third party doing business as "Binance" is a Jumio customer and uses Jumio's identity verification product. The remaining allegations in Paragraph 34 contain legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the remaining allegations in Paragraph 34.

35. Plaintiff Davis was an Illinois citizen and was physically located in Illinois when he completed the identity verification described above.

**ANSWER:** Jumio has insufficient knowledge or information to admit or deny the allegations in Paragraph 35 and denies them on that basis.

36. Neither Jumio nor Binance informed Plaintiff Davis that Jumio would collect, store, or use his biometric data derived from his face. In fact, there was no notice whatsoever that Jumio is even involved in the process.

**ANSWER:** Paragraph 36 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 36.

37. Plaintiff Davis never signed a written release allowing Jumio to collect, use, or store his biometric identifiers derived from his face.

**ANSWER:** Paragraph 37 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 37.

38. Plaintiff Davis has, therefore, been exposed to the risks and harmful conditions created by Jumio's violations of BIPA alleged herein.

**ANSWER:** Jumio denies the allegations in Paragraph 38.

39. Plaintiff Davis seeks damages under BIPA as compensation for the injuries Jumio has caused.

**ANSWER:** Jumio admits that Plaintiff seeks damages as outlined in the Prayer for Relief. Jumio denies that it has violated BIPA or caused Plaintiff Davis injury or that Plaintiff

Davis and the individuals he purports to represent are entitled to any relief in law, equity, or otherwise.

## FACTS SPECIFIC TO PLAINTIFF NEEDHAM

40.     Plaintiff Daniel Needham is a member of an online cryptocurrency marketplace called Binance. In order to participate in the marketplace, consumers are required to confirm their identity.

**ANSWER:** Jumio has insufficient knowledge or information to admit or deny the allegations in Paragraph 40 and denies them on that basis.

41.     For this purpose, this online marketplace, along with various other companies, partnered up with Jumio to identify its users using Jumio's biometric technology.

**ANSWER:** Jumio admits that a third party doing business as "Binance" is a Jumio customer and uses Jumio's identity verification product.  Jumio has insufficient knowledge or information to admit or deny the remaining allegations in Paragraph 41 and denies them on that basis.

42.     On or around May 2021, Binance's mobile application required Plaintiff Needham to upload a photograph of his driver's license and a photograph of his face, so that he could be identified. Jumio subsequently used biometric identification technology to extract his biometric identifiers from each photograph, create two face templates, and compare the templates for a match.

**ANSWER:** Jumio has insufficient knowledge or information to admit or deny the allegations regarding Plaintiff's use of the Binance mobile application and the information he uploaded and denies them on that basis.  Jumio admits that a third party doing business as "Binance" is a Jumio customer and uses Jumio's identity verification product.  The remaining allegations in Paragraph 42 contain legal conclusions to which no response is required.  To the extent a further response is required, Jumio denies the remaining allegations in Paragraph 42.

43.     Plaintiff Needham was an Illinois citizen and was physically located in Illinois when he completed the identity verification described above.

**ANSWER:** Jumio has insufficient knowledge or information to admit or deny the allegations in Paragraph 43 and denies them on that basis.

44.     Neither Jumio nor Binance informed Plaintiff Needham that Jumio would collect, store, or use his biometric data derived from his face. In fact, there was no notice whatsoever that Jumio is even involved in the process.

**ANSWER:** Paragraph 44 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 44.

45.     Plaintiff Needham never signed a written release allowing Jumio to collect, use, or store his biometric identifiers derived from his face.

**ANSWER:** Paragraph 45 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 45.

46.     Plaintiff Needham has, therefore, been exposed to the risks and harmful conditions created by Jumio's violations of BIPA alleged herein.

**ANSWER:** Jumio denies the allegations in Paragraph 36.

47.     Plaintiff Needham seeks damages under BIPA as compensation for the injuries Jumio has caused.

**ANSWER:** Jumio admits that Plaintiff seeks damages as outlined in the Prayer for Relief. Jumio denies that it has violated BIPA or caused Plaintiff Needham injury or that Plaintiff Needham and the individuals he purports to represent are entitled to any relief in law, equity, or otherwise.

## CLASS ALLEGATIONS

48.     Class Definition:  Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their biometric identifiers or biometric information, including faceprints and facial geometry, collected, captured, received, or otherwise obtained by or disclosed to Jumio while residing in Illinois.

The following people are excluded from the Class:  (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors,

predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**ANSWER:** Jumio admits that Plaintiffs attempt to bring this action individually and on behalf of a class of purportedly similarly situated individuals, as defined in Paragraph 48 of the First Amended Complaint. Jumio denies that any putative class is amenable to class certification or that Plaintiffs can satisfy the requirements of Rule 23. Except as expressly admitted, Jumio denies the allegations in Paragraph 48.

49. **Numerosity:** The exact number of Class members is unknown to Plaintiffs at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of consumers who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

**ANSWER:** Jumio has insufficient knowledge or information to admit or deny the allegations in Paragraph 49 regarding Plaintiffs' knowledge concerning the number of putative Class members and denies them on that basis. Jumio denies that "the [putative Class] members can be easily identified through Defendant's records." The remaining allegations in Paragraph 49 contain legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the remaining allegations in Paragraph 49.

50. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

> a. whether Defendant collected, captured, or otherwise obtained Plaintiffs' and the Class's biometric identifiers or biometric information;
>
> b. whether Defendant properly informed Plaintiffs and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;
>
> c. whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiffs' and the Class's biometric identifiers or biometric information;

    d.   whether Defendant has sold, leased, traded, or otherwise profited from Plaintiffs' and the Class's biometric identifiers or biometric information;

    e.   whether Defendant used Plaintiffs' and the Class's faceprints or facial geometry to identify them; and

    f.   whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently.

**ANSWER:** Paragraph 50 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 50, and denies that any putative class is amenable to class certification or that Plaintiffs can satisfy the requirements of Rule 23.

51. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

**ANSWER:** Paragraph 51 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio has insufficient knowledge or information to admit or deny the allegations in Paragraph 51 and denies them on that basis. Jumio denies that any putative class is amenable to class certification or that Plaintiffs can satisfy the requirements of Rule 23.

52. **Superiority**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

17

**ANSWER:** Paragraph 52 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 52, and denies that any putative class is amenable to class certification or that Plaintiffs can satisfy the requirements of Rule 23.

## CAUSE OF ACTION
### Violation of 740 ILCS 14/15(b)
### (On Behalf of Plaintiffs and the Class)

53.     Plaintiffs incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:** Jumio incorporates its answers to the allegations in Paragraphs 1-52.

54.     BIPA requires companies to obtain informed written consent from individuals before acquiring their biometric data.  Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first:  (1) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject ... in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information...." 740 ILCS 14/15(b) (emphasis added).

**ANSWER:** Jumio admits that 740 ILCS § 14/15(b) states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:  (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."  Jumio denies the remaining allegations in Paragraph 54.

55.     Unfortunately, Jumio fails to comply with these BIPA mandates.

**ANSWER:** Paragraph 55 contains legal conclusions to which no response is required.

To the extent a further response is required, Jumio denies the allegations in Paragraph 55.

56.    Defendant is corporation and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

**ANSWER:** Jumio admits it is a Delaware corporation. Paragraph 56 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 56.

57.    Plaintiffs and the Class are individuals who had their "biometric identifiers" collected by Jumio (in the form of their facial scans), as explained in detail in Section II. *See* 740 ILCS 14/10.

**ANSWER:** Paragraph 57 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 57. Jumio incorporates its answers to the allegations in Section II.

58.    Plaintiffs' and the Class's biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

**ANSWER:** Paragraph 58 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 58.

59.    Jumio violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiffs and the Class before it collected, used, and stored their biometric identifiers and biometric information.

**ANSWER:** Paragraph 59 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 59.

60.    Jumio violated 740 ILCS 1 4/15(b)(1) by failing to inform Plaintiffs and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

**ANSWER:** Paragraph 60 contains legal conclusions to which no response is required. To the extent a further response is required, Jumio denies the allegations in Paragraph 60.

61.    Jumio violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiffs and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

**ANSWER:** Paragraph 61 contains legal conclusions to which no response is required.

To the extent a further response is required, Jumio denies the allegations in Paragraph 61.

62. By collecting, storing, and using Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Jumio violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA, 740 ILCS 14/1, *et seq*.

**ANSWER:** Paragraph 62 contains legal conclusions to which no response is required.

To the extent a further response is required, Jumio denies the allegations in Paragraph 62.

63. On behalf of themselves and the Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, liquidated damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees, costs, and expenses pursuant to 740 ILCS 14/20(3).

**ANSWER:** Jumio admits that Plaintiffs seek the remedies described in Paragraph 63 "on behalf of themselves and the Class." Jumio denies that Plaintiffs and the individuals they purport to represent are entitled to any relief in law, equity, or otherwise.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully requests that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs Cory Davis and Daniel Needham as a representatives of the Class, and appointing their counsel as Class Counsel;

B. Declaring that Defendant's actions, as set out above, violate BIPA;

C. Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with BIPA;

E. Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

F.      Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

G.      Awarding such other and further relief as equity and justice may require.

**ANSWER:**  Answering the prayer, Jumio denies that Plaintiffs and the individuals whom they purport to represent are entitled to any relief in law, equity, or otherwise.

### JURY TRIAL

Plaintiffs Cory Davis and Daniel Needham demand a trial by jury for all issues so triable.

**ANSWER:**  Jumio admits that Plaintiffs demand a trial by jury.

### DEFENDANT'S AFFIRMATIVE DEFENSES

Without assuming the burden of proof on any matters that would otherwise rest with Plaintiffs, and expressly denying any and all wrongdoing, Jumio further responds to Plaintiffs' First Amended Complaint by alleging the following affirmative defenses.

### First Affirmative Defense
### (GLBA exception)

The claims are barred in whole or in part because the third party doing business as "Binance" is a financial institution subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder, and because to apply BIPA to Jumio in this case would be to unlawfully apply BIPA "in any manner" to "Binance" in violation of 740 ILCS 14/25(c).

### Second Affirmative Defense
### (Class Action Settlement)

The claims are barred in whole or in part because they have been released pursuant to the class action settlement that received final approval on July 21, 2020, from the Circuit Court of Cook County, Illinois in *Prelipceanu v. Jumio*, Case. No. 2018-CH-15883.

### Third Affirmative Defense
### (Substantial Compliance)

The claims are barred in whole or in part because, to the extent that BIPA applies to the conduct alleged in the First Amended Complaint (which Jumio denies), Jumio substantially complied with the requirements of BIPA. The purposes motivating BIPA's collection, use, and retention requirements are not implicated by Jumio's identity verification product and are satisfied by the information Jumio provides about its technology and the procedures it uses for obtaining consent from its customers' end users. Upon information and belief, Plaintiffs and the putative class members whom they purport to represent have suffered and will suffer no prejudice arising out of any alleged lack of strict compliance. Plaintiffs and the putative class members whom they purport to represent accordingly are precluded from recovery based on the conduct alleged in the First Amended Complaint.

### Fourth Affirmative Defense
### (Estoppel and Waiver)

The claims are barred in whole or in part by the doctrines of estoppel and/or waiver. Upon information and belief, Plaintiffs and the putative class members whom they purport to represent approved and, in some cases, participated in the conduct of which they now complain, specifically, by scanning their faces with a webcam or mobile device and uploading the scans. As a result, they are barred from bringing their claims under the doctrines of estoppel and/or waiver.

### Fifth Affirmative Defense
### (Extraterritoriality)

The claims are barred in whole or in part because BIPA does not extend extraterritorially. BIPA does not apply outside Illinois because the Illinois legislature did not clearly state that it intended for BIPA to apply outside Illinois. Upon information and belief, the conduct alleged to violate BIPA in this case took place entirely or predominantly outside Illinois. Thus, the conduct alleged in the First Amended Complaint is not governed by BIPA.

**Sixth Affirmative Defense**
**(Dormant Commerce Clause)**

The claims are barred in whole or in part by the dormant Commerce Clause of the United States Constitution. If the conduct alleged in the First Amended Complaint qualifies as a violation of BIPA, then BIPA would have the practical effect of allowing Illinois law to regulate conduct occurring entirely outside of Illinois; BIPA would subject Jumio to inconsistent regulations; and BIPA would usurp the prerogative of other states to make their own policy choices.

**Seventh Affirmative Defense**
**(Consent)**

The claims are barred in whole or in part because Plaintiffs and/or members of the putative class, or representatives with authority to act on their behalf, consented to the conduct alleged to violate BIPA.

Upon information and belief, Plaintiffs and/or members of the putative class consented to the conduct alleged to violate BIPA through their conduct or otherwise, including (1) through their respective agreement(s) with one or more of Jumio's customers; and (2) through their conduct in connection with their use of Jumio's identity verification product.

In the alternative, the Jumio customers from which Plaintiffs and/or the putative class members sought to purchase products acted as their legally authorized representatives and consented to the conduct alleged to violate BIPA.

**Eighth Affirmative Defense**
**(Photograph Exception)**

The claims are barred in whole or in part because they fall within BIPA's photograph exception. The definition of "biometric identifiers" in BIPA excludes "photographs" and the definition of "biometric information" in BIPA excludes "information derived from items or procedures excluded under the definition of biometric identifiers." 740 ILCS 14/10. Because the claims are based in whole or in part on the alleged collection of biometric data from photographs

23

uploaded by Plaintiffs and members of the putative class, BIPA does not apply and the claims are therefore barred.

### Ninth Affirmative Defense
### (Choice of Law)

The claims are barred in whole or in part because Plaintiffs and/or members of the putative class agreed that the laws of states other than Illinois would govern the claims raised herein, in their contractual arrangements with Jumio customers or otherwise. Consequently, Plaintiffs and/or putative class members are barred from bringing claims under any Illinois law, including BIPA.

### Tenth Affirmative Defense
### (Arbitration)

The claims are barred in whole or in part because Plaintiffs and/or members of the putative class agreed to arbitrate the claims asserted herein, through their contractual arrangements with Jumio customers or otherwise.

### Eleventh Affirmative Defense
### (Limitation of Liability)

The claims are barred in whole or in part because Plaintiffs and/or members of the putative class agreed to limitations of Jumio's liability for the claims asserted herein, either in their contractual agreements with Jumio customers or otherwise.

### Twelfth Affirmative Defense
### (Class Action Waiver)

The claims are barred in whole or in part because Plaintiffs and/or members of the putative class agreed to proceed with the claims asserted herein solely on an individual basis and not as a party to any class action or collective action, either in their contractual arrangements with Jumio customers or otherwise.

## Thirteenth Affirmative Defense
### (BIPA Does Not Apply to Service Providers)

The claims are barred in whole or in part because Jumio is a service provider that collects and processes data on behalf of its customers, and BIPA does not apply to such service providers.

## Fourteenth Affirmative Defense
### (Good Faith)

The claims are barred in whole or in part by Jumio's good faith, and its absence of negligent, intentional, or reckless conduct. To the extent that BIPA applies to Jumio's conduct as alleged in the First Amended Complaint, Jumio is not liable because it relied in good faith upon a reasonable interpretation of BIPA's statutory language and any alleged violation was not negligent, intentional, or reckless.

## Fifteenth Affirmative Defense
### (Absence of Standing)

The claims may be barred in whole or in part because, under Article III of the United States Constitution, if the allegations of injury in the First Amended Complaint are established to be without basis, Plaintiffs and at least some of the putative class members lack standing to bring some or all of the claims asserted in the First Amended Complaint.

## Sixteenth Affirmative Defense
### (Special Legislation)

BIPA violates the Illinois constitution because it is "special legislation." *See* Ill. Const., art. IV, § 13 (prohibiting a "special or local law when a general law is or can be made applicable"). For example, BIPA exempts contractors, subcontractors, and agents of state and local governments. 740 ILCS § 14/25 (e). It also effectively exempts healthcare providers who collect information "in a health care setting." 740 ILCS § 14/10. But the Illinois legislature is prohibited from designing a law "that discriminates in favor of a select group in an arbitrary manner." *Big Sky Excavating, Inc. v. Illinois Bell Tel. Co*., 217 Ill. 2d 221, 235 (2005). The BIPA exemptions are arbitrary, and therefore the statute is unconstitutional special legislation.

### Seventeenth Affirmative Defense
### (First Amendment)

The claims are barred in whole or in part by the First Amendment of the United States Constitution. BIPA violates the First Amendment by unconstitutionally prohibiting Jumio from collecting, creating, and sharing information. BIPA is a content-based restriction on speech because it explicitly places restrictions on the collection or creation of some categories of personal information ("biometric identifiers" and "biometric information") that give rise to expression, but not others (e.g., writing samples, photographs, tattoo descriptions). 740 ILCS § 14/10. BIPA is a speaker-based restriction on speech because it burdens the speech of private entities but exempts other types of entities, such as the government and its contractors. *See, e.g.*, 740 ILCS § 14/25. BIPA fails strict scrutiny because it is not narrowly tailored to serve a compelling government interest. BIPA also fails intermediate scrutiny because it burdens the collection and analysis of information without a sufficiently important governmental interest.

### Eighteenth Affirmative Defense
### (Vagueness)

The claims are barred in whole or in part because BIPA, including but not limited to the statute's definitions of "biometric identifiers" and "biometric information," are vague in violation of the United States Constitution and the Illinois constitution.

### Nineteenth Affirmative Defense
### (Due Process)

The claims for damages are barred in whole or in part by the Due Process Clause of the United States Constitution. Plaintiffs allege that they and the putative class members whom the purport to represent are each entitled to recover a minimum of $1,000 in statutory damages for each alleged violation of BIPA. Plaintiffs further allege that the number of putative class members amounts to "at least hundreds." The disparity between the actual injury and damage allegedly suffered by Plaintiffs and the putative class members, on one hand, and the potentially exorbitant statutory damages available under BIPA, on the other hand, is so grossly excessive and disproportionate as to constitute a violation of Jumio's due process rights.

## Twentieth Affirmative Defense
### (Discretionary Damages)

The claims for damages are barred in whole or in part because BIPA's liquidated damages provisions are discretionary, rather than mandatory, and Plaintiffs' allegations provide no basis for the award of liquidated damages. Upon information and belief, Plaintiffs and the individuals they seek to represent have not suffered any injury or damage due to Jumio's alleged conduct, and awarding liquidated damages under such circumstances would be inappropriate and unjust.

## Twenty First Affirmative Defense
### (Ratification and Acquiescence)

The claims are barred in whole or in part by the doctrines of ratification and acquiescence. Upon information and belief, Plaintiffs and the putative class members approved and, in some cases, participated in the conduct of which they now complain, including by scanning their faces with a mobile device and uploading the scans, even after they knew or should have known of the conduct alleged in the First Amended Complaint. As a result, they are barred from bringing their claims under the doctrines of ratification and acquiescence.

## Twenty Second Affirmative Defense
### (Not Aggrieved)

The claims are barred in whole or in part because Plaintiffs and the putative class members are not "aggrieved" within the meaning of 740 ILCS § 14/20. Upon information and belief, Plaintiffs and the putative class members have not suffered any actual injuries, injuries in fact, or any other injuries or harms to their distinct and personal legal interests. Accordingly, they are not "aggrieved" within the meaning of BIPA and may not seek relief under the statute.

## Twenty Third Affirmative Defense
### (Adequate Remedy at Law)

Plaintiffs' claims for injunctive and equitable relief fail because Plaintiffs have an adequate remedy at law.

## RESERVATION OF AFFIRMATIVE DEFENSES

Jumio currently has insufficient knowledge or information upon which to form a belief about whether it may have additional affirmative defenses.  Jumio hereby reserves the right to assert any such affirmative defenses.

## JUMIO'S PRAYER FOR RELIEF

WHEREFORE, Jumio prays for the following relief:

1.  That Plaintiffs recover nothing by reason of their First Amended Complaint, and that judgment be rendered in favor of Jumio;

2.  That Plaintiffs be denied class certification;

3.  That Jumio be awarded its costs of suit incurred in defense of this action, including reasonable attorneys' fees; and

4.  For other such relief as the Court deems proper.


Dated:  September 5, 2023

Respectfully submitted,

**JUMIO CORPORATION**

By:  */s/ Susan D. Fahringer*
     Susan D. Fahringer
     One of its Attorneys

Susan D. Fahringer (ARDC No. 6331227)
SFahringer@perkinscoie.com
Nicola Menaldo (*Pro Hac Vice*)
NMenaldo@perkinscoie.com
Anna Mouw Thompson (*Pro Hac Vice*)
AnnaThompson@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8687
Facsimile:  206.359.9687

Debra R. Bernard (ARDC No. 6191217)
DBernard@perkinscoie.com
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559

28

Telephone:  312.324.8400
Facsimile:  312.324.9400

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 5, 2023, a copy of the foregoing JUMIO

CORPORATION'S ANSWER TO FIRST AMENDED COMPLAINT was served via the

Court's ECF filing system to the following attorneys of record:

> J. Eli Wade-Scott
> ewadescott@edelson.com
> Schuyler Ufkes
> sufkes@edelson.com
> Zoe Emilia Seaman-Grant
> zseaman-grant@edelson.com
> EDELSON PC
> 350 North LaSalle Street, 14th Floor
> Chicago, IL 60654
> Telephone:  312-589-6370
> Firm ID:  62075
>
> *Attorneys for Plaintiff*

/s/ Susan D. Fahringer